STATE EX REL. SYMONS *v.* THE EAST CHICAGO STATE BANK.

BANK OF WHITING, GUARDIAN *v.* THE EAST CHICAGO STATE BANK.

[No. 16,108. Filed November 30, 1938.]

*Joseph A. Meade,* for appellant.

*Riley, Reed, Murphy & McAtee,* for appellee.

STEVENSON, P. J.—This is an appeal from a judgment entered in the Superior Court of Lake County, Room 2, in a matter growing out of the liquidation of The East Chicago State Bank, a corporation. The Bank of Whiting, guardian of Ruth Asbury, a minor, filed a petition to have the claim of said guardian allowed as a preferred claim. The trial court disallowed the appellant's claim as preferred but allowed it as a general claim in the amount of $1,644.39.

The record in this case discloses that on the 18th day of December, 1928, the judge of the Lake Superior Court, Room 2, appointed East Chicago State Bank as guardian of the person and property of Ruth Asbury, a minor child; that subsequent to the appointment of said East Chicago State Bank certain insurance monies belonging to said ward were collected by said guardian and held by said bank in trust for said minor child. The record further discloses that the charter of East Chicago State Bank expired on the 24th day of December, 1929, and that a new bank was organized under the name of The East Chicago State Bank, whose charter

bears the date of December 18, 1929, and this institution, The East Chicago State Bank, took over all of the assets and assumed all of the liabilities of said East Chicago State Bank on the 24th day of December, 1929. On that date East Chicago State Bank as guardian of Ruth Asbury, a minor, had on deposit in its trust department $1,500.00 as the property of said ward and this amount was transferred to the new institution, The East Chicago State Bank.

The evidence discloses that the new bank, The East Chicago State Bank, continued to act as guardian for the said ward and on March 4, 1930, filed an inventory and appraisement of the property belonging to said Ruth Asbury, in which inventory and appraisement The East Chicago State Bank designated itself as guardian of said minor and reported to the Superior Court of Lake County that it had on hand as such guardian of said minor the sum of $1,587.98. The record further discloses that The East Chicago State Bank on November 4, 1931, filed a guardian's account current with the Lake Superior Court, Room 2, showing that it had on hand as such guardian the sum of $1,659.39 and asking the court to allow and approve payment of $15.00 to its attorneys for their services in such guardianship.

The record further discloses that The East Chicago State Bank was taken over by the Department of Financial Institutions of the State of Indiana on June 27, 1932, and that George W. Lewis was appointed receiver of said bank and took possession of all its assets; that at the time of closing of said bank there was on hand in said fund belonging to said ward the sum of $1,644.39. It is stipulated as a fact in this case that The East Chicago State Bank was never appointed guardian of the person or property of said Ruth Asbury, a minor, although they had purported to act in such capacity. The court record shows no resignation of East Chicago State

Bank as guardian nor was there any removal of East Chicago State Bank as guardian.

The record discloses that the Bank of Whiting was appointed guardian on December 3, 1932, and that on February 20, 1933, George W. Lewis, receiver of and for The East Chicago State Bank, filed what he designated a final report for the said The East Chicago State Bank as guardian, showing the cash on hand in said trust at the time of the closing of the bank and asking that the report be approved and said bank be released and discharged as guardian. The record further discloses that during the time The East Chicago State Bank purported to act as guardian for said Ruth Asbury three deposits were credited to the account of said minor as follows: (1) February 24, 1931—$42.98; (2) February 24, 1931—$45.00; (3) November 3, 1931—$71.41. The record further discloses that on the times herein mentioned the above named banks had cash assets in excess of the amounts involved in this controversy.

The court, after hearing the evidence, found that the claimant, Bank of Whiting, as guardian of Ruth Asbury, was not entitled to have said claim preferred and that such claim should be allowed as a common claim against said receivership in the amount of $1,644.39. The judgment was entered accordingly.

The claimant filed a motion for a new trial, assigning: (1) that the finding of the court was contrary to law; (2) that the decision of the court is not sustained by sufficient evidence. The court overruled this motion on the 30th day of June, 1937, whereupon the claimant prayed an appeal on the same date, asked and was given 90 days in which to file a bill of exceptions and the court fixed the amount of appeal bond at $200. The court did not on said date designate or approve the surety on said bond but on August 9, 1937, in vacation, the Bank of Whiting, guardian of Ruth Asbury, filed in the office of

the clerk of the Lake Superior Court what purports to be an appeal bond with the Aetna Casualty & Surety Company as surety thereon in the amount of $250.00. This bond was never filed with the court or approved by it. On the 27th day of September, 1937, the claimant, Bank of Whiting, guardian of Ruth Asbury, filed its bill of exceptions in the clerk's office in Lake County, which bill of exceptions was duly signed by the judge of Lake Superior Court, Room 2, on August 30, 1937.

Claimant filed its transcript of these proceedings in the office of the clerk of the Supreme Court on October 6, 1937. No notice was given of the filing of this transcript and on January 23, 1938, the appellee filed its motion to dismiss this appeal, charging generally that the steps necessary in perfecting a term time appeal had not been taken nor had such steps been taken necessary to constitute a vacation appeal. On January 27, 1938, the appellee filed a motion for leave to withdraw their motion to dismiss this appeal and asked an extension of time for a period of 60 days in which to prepare and file a brief on the merits of this cause. This motion to withdraw the motion to dismiss was granted. The motion to dismiss was withdrawn, the petition for extention of time in which to file briefs was granted, and the time in which to file the same was extended to April 7, 1938. The appellee's briefs were filed on April 2, 1938.

The only error assigned by the appellant and presented by his briefs is that the court erred in overruling appellant's motion for a new trial. The appellee contends that the Appellate Court of Indiana does not have jurisdiction of this appeal for the reason that the appeal has not been properly perfected as a term time appeal for the reason that no time was asked or granted the appellant in which to file the appeal bond beyond the term. On this question, attention is

directed to section 2-3217 Burns' Indiana Statutes 1933 §489 Baldwin's 1934. It reads as follows: "Executors, administrators and guardians may have an appeal and stay of proceedings in the court below without giving an appeal bond." It is apparent from a reading of this statute that no bond on appeal is required where a guardian appeals in his representative capacity. In face of this statute, however, the court ordered an appeal bond. Without passing upon the legal effect of such an order, it is sufficient for the purposes of this case to note that if the bond was not sufficient for the accomplishment of the purpose to perfect an appeal in term, an appeal in vacation would not thereby be defeated. *Pittsburgh, etc., R. Co.* v. *Reed* (1905), 36 Ind. App. 67, 75 N. E. 50. As was said by our Supreme Court in the case of *Cleveland, etc., R. Co.* v. *Smith* (1912), 177 Ind. 524, 531, 97 N. E. 164:

> "The object of an appeal bond is to stay proceedings on the judgment. In a term-time appeal, such proceedings are stayed without a writ of supersedeas, and no notice of the appeal is necessary. If, however, the appeal bond required by the statute (§679 Burns 1908, §638 R. S. 1881) is not filed at all, or not filed within the designated time, or pursuant to the court's order, the appeal cannot operate other than as a vacation appeal, which requires notice to be served on the appellee, to make him a party to the appeal, and if it is desired to stay proceedings on the judgment, requires the issuance of a writ of supersedeas. (§§679-682 Burns 1908, §§638-641 R. S. 1881; *Michigan Mutual Life Ins. Co.* v. *Frankel* (1898), 151 Ind. 534, 50 N. E. 301.)"

Since the transcript was filed in this court within the time allowed by law, the question therefore arises whether or not this appeal may be treated as a vacation appeal. The appellee contends that this appeal has not been properly perfected as a vacation appeal for the reason that no notice of a vacation appeal has been

served upon the appellee and no steps taken to bring the appellee into court.

While it is true that no notice of the appeal was served upon the appellee, the appellee has entered an appearance in this case and filed a brief upon the merits. Under the settled practice of both this court and the Supreme Court, this was a waiver of notice and jurisdiction attached. *Alvey* v. *Wiggs* (1913), 53 Ind. App. 263, 101 N. E. 637; *Jeffries* v. *Orndorf* (1909), 44 Ind. App. 225, 88 N. E. 958; *Pittsburgh, etc., R. Co.* v. *Reed, supra; Jones, Executor* v. *Henderson et al.* (1898), 149 Ind. 458, 49 N. E. 443; *Cleveland, etc., R. Co.* v. *Smith, supra; Brodt* v. *Duthie* (1933), 97 Ind. App. 692, 186 N. E. 895.

The error assigned is the overruling of the appellant's motion for a new trial and particularly charging that the finding of the court is not sustained by sufficient evidence and is contrary to law. This assignment presents for our consideration the question as to whether or not the trial court erred in refusing to allow the claim as preferred.

The appellant contends that Chapter 167, p. 580, Section 1, of the Acts of the Indiana General Assembly (1931) is controlling in this case. Section 1 of said Act is as follows:

"Be it enacted by the general assembly of the State of Indiana, That, hereafter, upon the insolvency, suspension or liquidation of any bank of discount and deposit, or loan and trust and safe deposit company, while acting as executor, administrator, receiver, guardian, assignee, commissioner, agent, attorney-in-fact, or in any other fiduciary capacity, the person or persons beneficially entitled to receive the property and proceeds held in trust by it as aforesaid, or its successors in trust, shall have preference and priority over its general creditors in all assets of such bank or loan and trust and safe deposit company, for all uninvested funds so

held in trust to the extent of any commingling with its general assets or which may not be duly accounted for."

This Act became effective March 11, 1931, and was accordingly in force on June 27, 1932, when The East Chicago State Bank closed its doors. It is for this court to determine therefore whether or not, at the time The East Chicago State Bank was taken over by the Department of Financial Institutions of Indiana, it was acting as guardian or in any other fiduciary capacity with respect to the funds belonging to the said Ruth Asbury, minor.

It was stipulated by all parties that The East Chicago State Bank was never appointed legal guardian of the person and property of the said Ruth Asbury; but on the 24th day of December, 1929, The East Chicago State Bank purchased all the assets and assumed all the liabilities of East Chicago State Bank, the legal guardian of said minor. The record discloses that after that date The East Chicago State Bank purported to act as guardian for said minor, filed an inventory with the court in which the guardianship was pending of the assets constituting such trust, filed a current report as such guardian on November 4, 1931, and acted in all matters relating to said funds belonging to said minor child as if it were in truth and in fact the legal guardian.

Having assumed so to act, it is our opinion that The East Chicago State Bank became a volunteer or *de facto* guardian and as such became subject to all the duties and liabilities of a legal guardian. *In re Cameron's Estate* (1909), 158 Mich. 174, 122 N. W. 564; *In re Giambastiani's Estate* (1934), 1 Calif. App. (2d) 639, 37 Pac. (2d) 142; 12 Ruling Case Law, pp. 11-12; 28 C. J. p. 1064.

While there is little authority on the subject of *de facto* guardians in the State of Indiana, our courts have

recognized their existence and have consistently held them to the same degree of accountability as is required of legal guardians. It has been held in the State of Indiana that where a stranger enters into and occupies an infant's lands without any claim or right, the infant has a right to regard such a stranger as his guardian or trustee and such stranger will be chargeable as such. *Grimes et al.* v. *Wilson et ux.* (1837), 4 Blackf. 331; *Breeding* v. *Shinn* (1856), 8 Ind. 125.

The Supreme Court in the case of *Hiestand and Others* v. *Kuns* (1847), 8 Blackf. 345, announces the general proposition that: "There are in law constructive as well as actual guardians."

It seems clear to us, therefore, that The East Chicago State Bank, acting as a *de facto* guardian, was within the provision of the statute above quoted, which makes all funds held by such bank in a fiduciary capacity a preferred claim against the receiver. Since the record discloses that there were at all times on hand in said bank cash assets in excess of the amount of the appellant's claim, the appellant is entitled to have said claim allowed as preferred. *Union Trust Co.* v. *Ralston* (1936), 101 Ind. App. 548, 191 N. E. 94.

The judgment of the trial court is reversed with the instructions that the trial court render judgment allowing appellant's claim against the appellee in the amount of $1,644.39 as preferred against all the general assets of The East Chicago State Bank.