Dorothy M. TROOK, Appellant,

v.

**LAFAYETTE BANK AND TRUST COMPANY, Appellee.**

No. 79A02–9010–CV–569.

Court of Appeals of Indiana, Second District.

Nov. 21, 1991.

Robert A. Mucker, Gambs, Mucker, Bauman & Seeger, Lafayette, for appellant.

William C. Burns, Lafayette, for appellee.

SULLIVAN, Judge.

Dorothy Trook (Trook) brings this interlocutory appeal challenging the trial court's ruling that Lafayette Bank and Trust Company (Bank) had authority to act as Trook's guardian from February, 1989 to June, 1989.

We affirm.

Trook presents the following issue for our review:

Whether a court-appointed guardian, whose appointment is later adjudged to have been defectively made because of the trial court's failure to comply with statutory prerequisites to appointment, has authority to act as guardian of the ward's property after the defective appointment is made but before the appointment is challenged?

The pertinent facts are not in dispute. In February, 1989, Trook was hospitalized after suffering a cerebral stroke.[1] On Feb-

---

1. The record does not reveal the extent of Trook's incapacity, if any, resulting from the

ruary 22, 1989, Trook's husband filed a Petition For Appointment of an Adult Guardian, alleging that Trook needed a guardian because of the stroke and its effects. On that same day, February 22, having found that all necessary parties had consented to the guardianship proceeding, or had been served adequate notice by summons or registered or certified mail, the court appointed Bank as guardian of Trook's estate. Bank then executed its duties as Trook's guardian and took possession of her real and personal property and began managing her financial affairs.

On June 15, 1989, Trook filed her petition seeking to vacate the guardianship appointment, to expunge the record, and to abate the proceedings.[2] Trook alleged, and the record reflects, that notice of the proceedings had not been served upon Trook.[3] The record also reflects that the court did not conduct the statutorily required hearing to determine incompetency,[4] nor did it grant sufficient time between the filing of the petition to appoint a guardian and the appointment of the guardian.[5] On June 11, 1989, the court granted Trook's petition to vacate, finding that the guardianship appointment was improvidently and prematurely made. Thereafter, on June 29, Bank filed its final guardianship account. The account showed that, at the time of the commencement of the guardianship, Trook's assets were valued at $114,702.25. As guardian, Bank authorized expenditure of $28,855.31 of Trook's funds. On October 3, Trook filed objections to the account-

ing and to release of guardian. She requested the return of all of the assets that had been collected by Bank. Included in the assets that Trook requested be returned to her was the $28,855.31 amount which Bank had already expended on behalf of Trook. Trook's request that the expended amount be returned to her is based upon the contention that Bank had no authority to use any of the assets in her estate for any reason because the guardianship appointment had been invalid. On September 6, the trial court issued its finding that "the Bank had [the authority to act as guardian] pursuant to court order even though Bank's appointment was subsequently ruled substantively defective." Record at 44. The instant appeal followed.

By virtue of its ruling that Bank's acts during the defective guardianship were authorized, the court has made possible a later ruling that expenditures of money during that time, if deemed appropriate according to normal guardianship accounting standards, were proper and thus not chargeable to Bank. However, if Bank's expenditures were unauthorized, as Trook asserts, then Bank must refund the entire $114,702.25, regardless whether any expenditures were reasonable according to normal guardianship standards. In order to decide whether Bank's actions were authorized, we must address the following questions:

I. What was the nature of the court's ruling appointing Bank as guardian— was it void or voidable; and

stroke. However, because of the nature of Trook's challenge to the guardianship, the extent of her incapacity is irrelevant.

2. Again, because of the interlocutory nature of the instant action and the resultant lack of full factual development below, we are left to assume that Dorothy Trook recovered at least to some extent from the disabilities, if any, brought on by the cerebral stroke. Indeed, in its Petition to Convert Guardianship to Temporary Guardianship, Bank stated that Trook "has now recovered from her stroke and paralysis." Record at 26. In any event, as stated in footnote 1, supra, Trook's physical capacity is irrelevant to the issue presented in this appeal.

3. The events pertinent to the instant appeal took place before July 1, 1989. Therefore, although

the relevant Probate Code provisions in force at that time were repealed effective July 1, 1989, the instant action is controlled by the repealed provisions. I.C. § 29-1-18-14(c)(1-3) (Burns Code Ed.1972) (repealed, effective July 1, 1989), required that notice of the hearing on petition of guardianship be served upon the incompetent, the person having care of the incompetent, and any other person that the court directs should get notice.

4. I.C. § 29-1-18-19 (Burns Code Ed.1972) (repealed, effective July 1, 1989).

5. I.C. § 29-1-18-14 requires that notice be given at least ten (10) days in advance of the hearing on the petition, which may be reduced to no less than three (3) days upon a showing of good cause.

II. What species of guardianship did the court create, if any, by its defective appointment of Bank as guardian?

## I. Void v. Voidable

■ This issue presented for our review involves the interpretation of Indiana law and does not involve questions of fact. In reviewing legal determinations made by the trial court we determine whether the trial court erred in its application of the law. *See, e.g., Indiana & Michigan Electric Company v. Terre Haute Industries, Inc.* (1984) 1st Dist. Ind.App., 467 N.E.2d 37.

Trook contends that the court's appointment of Bank as guardian was void, and not merely voidable. Implicit in Trook's argument is her understanding that the terms "void" and "voidable" have different meanings which may dictate significantly different results. So it is in the instant case. If the court's appointment was void, it would necessarily mean that anything done subsequent to the appointment but before the appointment was vacated was without legal justification. If, on the other hand, the appointment was voidable, any action undertaken in the interim period was arguably legally justifiable. However, this distinction between the two terms appears to have been occasionally lost in judicial writing.

■ Case law, both in Indiana and elsewhere, seems frequently to use the terms "void" and "voidable" interchangeably, without due regard for the technical—but nonetheless important—difference between their meanings.

"*[V]oid* in the strict sense means that an instrument or transaction is nugatory and ineffectual so that nothing can cure it; *voidable* exists when an imperfection or defect can be cured by the act or confirmation of him who could take advantage of it." (Emphasis in original) *Black's Law Dictionary* 812 (abridged 5th ed. 1983).

"Void" therefore may properly be used only when the action or subject matter it describes is of no effect whatsoever, and is incapable of confirmation or ratification. "Voidable," on the other hand, describes an action or subject matter which nonetheless operates to accomplish the thing sought to be accomplished, until the fatal flaw is judicially ascertained and declared. However, a court sometimes uses the term "void" when the effect of its holding indicates that the action or subject matter it describes is really voidable—that is, capable of ratification or confirmation. *See, e.g., Jessup v. Jessup* (1897) 17 Ind.App. 177, 46 N.E. 550.

Into this analysis we inject the term "void *ab initio*," which means literally "void from the beginning" and denotes an act or action that never had any legal existence at all because of some infirmity in the action or process. It is readily apparent that "void *ab initio*" has essentially the same meaning as "void." In fact, "void *ab initio*" is perhaps preferable because it more vividly underscores that concept which represents the significance of the difference between the term "voidable" and the terms "void" and "void *ab initio*": the former describes an act or subject matter that, although flawed in some respect, is not beyond retrieval; the latter describe an act whose flaw renders the act irretrievable and without effect.

■ Nowhere is the distinction between "void" and "voidable" more clearly brought into focus than in the area of jurisdiction. There are three jurisdictional elements in every action: jurisdiction of the subject matter; jurisdiction of the person; and jurisdiction of a particular case. *State ex rel. Public Service Commission v. Johnson Circuit Court* (1953) 232 Ind. 501, 112 N.E.2d 429. A judgment rendered by a court without jurisdiction to hear that particular case is voidable because the jurisdictional defect is waivable if not attacked by a timely appeal. *D.L.M. v. V.E.M.* (1982) 1st Dist. Ind.App., 438 N.E.2d 1023. On the other hand, lack of subject matter jurisdiction renders void any action undertaken by the court because the defect is not susceptible to waiver or cure. *Behme v. Behme* (1988) 1st Dist. Ind.App., 519 N.E.2d 578. Regrettably, the label which

courts attach to actions involving defects in personal jurisdiction has occasionally been misapplied.

Two recent Indiana decisions may give rise to the mistaken impression that judgments rendered in an action in which personal jurisdiction may be lacking are void, or void *ab initio,* and not merely voidable. In *Simmons v. Carter* (1991) 1st Dist. Ind. App., 576 N.E.2d 1278, a small claims action was filed by a non-attorney agent on behalf of his principal. The agent signed his own name on the Notice of Small Claim form and appeared upon the principal's behalf at the hearing, after which the court awarded the principal a default judgment. Three months after the default was entered, the defendant filed a motion challenging the validity of the judgment. Indiana law requires that in a Small Claims proceeding a natural person, if not appearing on his or her own behalf, must be represented by counsel.[6] In challenging the default judgment, the defendant asserted lack of notice of the hearing, and also that the agent was not an attorney. This court declared the default judgment void because of the defective representation. *Simmons, supra,* 576 N.E.2d at 1280. However, the court indicated that the plaintiff could have undertaken an action subsequent to the commission of the error which would have, in effect, cured the error.[7] Consistent with the true meanings of the terms, the judgment might better have been characterized as voidable, not void, because the defect was susceptible to cure or waiver.

In *Shotwell v. Cliff Hagan Ribeye Franchise, Inc.* (1991) Ind., 572 N.E.2d 487, 489, the Indiana Supreme Court set aside a default judgment because of defective service of process.[8] The court stated:

"Where there is no service of process, there can be no personal jurisdiction, and the default judgment issued by the court was void. In the proceeding to enforce the default judgment, the Hagan defendants *filed appropriate objections to personal jurisdiction thus preserving the error.*" (Emphasis added) *Id.* at 489.

Although labeling the judgment "void," the court treated it as voidable because it indicated that the judgment would have been valid had the complaining party failed to follow the steps necessary to preserve the error.

Applying the foregoing analysis to the instant case, we must first determine whether the defect was waivable or capable of cure. Trook contends that the judgment was defective, and void, because she was not served with notice.

█ Our General Assembly has acknowledged that a notice defect is not necessarily fatal by making specific provision for a waiver of such defect. I.C. § 29–1–18–14 provides that notice of guardianship hearings must be served upon specified parties unless they sign the petition or "have waived notice of the hearing." I.C. § 29–1–18–15 states: "Whenever notice of hearing in a guardianship proceeding is required, notice of hearing shall be served upon the following who do not appear *or waive notice of the hearing.*" (Emphasis added.) It is therefore beyond argument that lack of notice, in guardianship proceedings as well as in other contexts, is a waivable defect. Moreover, the waiver may operate even after the defect, i.e. lack of notice, occurs. *See, e.g., Overbeck v. Harmeyer* (1975) 164 Ind.App. 576, 331

---

6. Ind. Small Claims Rules, Rule 8(C).

7. Citing *The Christian Phone Book, Inc. v. Indianapolis Jewish Community Relations Council, et al.* (1991) 5th Dist. Ind.App., 576 N.E.2d 1276, the court indicated that the defect could have been cured if the plaintiff would have obtained legal counsel after the small claims action was commenced, but before the matter was submitted to the court and judgment entered. *Simmons, supra,* 576 N.E.2d at 1280.

8. The defendant was a Kentucky corporation. The plaintiff served the papers on the Indiana Secretary of State, which then forwarded the papers to the defendant's last known Kentucky address. However, the papers were returned to the Secretary of State marked "Moved Not Forwardable." The Secretary of State then filed affidavits of service as required by I.C. § 23–3–3–1 (Burns Code Ed.1984) (repealed 1987). According to that statute, valid service could be accomplished only if the return receipt showed either delivery and acceptance or refusal of acceptance. The receipts showed neither.

N.E.2d 41, 43–44 (court denied petition to vacate for lack of notice, stating: "Further, ... [petitioner's] attorney expressly waived the defect of failure to give notice, as same was waived by [petitioner's] appearance at the hearing.") The result is that lack of notice is a waivable defect in a guardianship proceeding, which renders the proceeding voidable and not void *ab initio*. In the instant case, therefore, the court's appointment of Bank was voidable. The significance of this classification is that some form of guardianship existed [9] before Trook successfully raised her "lack of notice" defense and the court vacated its guardianship order.

## II.  Defacto Guardianship

We must next determine the effect of a voidable guardianship during the period after the defective appointment is made but before the challenge to the defect is successfully brought. Historically, Indiana courts recognized the validity of guardianships in cases in which the appointment was defective; courts have labeled the result in such instances a *"de facto* guardianship." In *State ex rel. Symons v. East Chicago State Bank* (1938) 106 Ind.App. 4, 17 N.E.2d 491, a bank was appointed guardian of a minor's person and property. The bank's charter expired and a new bank assumed the old bank's assets and liabilities. The new bank continued to act as the minor's guardian although it had never been so appointed. This court held that the bank's actions had created a *de facto* guardianship:

"While there is little authority on the subject of de facto guardians in the State of Indiana, our courts have recognized

their existence and have consistently held them to the same degree of accountability as is required of legal guardians." *Symons, supra,* 17 N.E.2d at 494.

Trook, however, argues that Indiana abolished *de facto* guardianships by statute in I.C. § 29–1–18–4 (Burns Code Ed. 1972) (repealed effective July 1, 1989). That statute states:

"The jurisdiction of the court having probate jurisdiction over all matters of guardianship, other than guardianships ad litem, shall be exclusive, subject to the right of appeal. *All forms of guardianship not expressly provided for in this [Probate] Code, other than guardianships ad litem, are abolished."* (Emphasis added.)

The above-quoted statute was enacted in 1953, subsequent to *Symons* and other Indiana cases which acknowledged *de facto* guardianships. No cases decided since its enactment have discussed the viability of *de facto* guardianships in light of the statute. Unfortunately, Indiana does not provide a legislative history which would assist us in determining whether the legislature intended that I.C. § 29–1–18–4 abolish *de facto* guardianships. However, because I.C. § 29–1–18–4 was modeled after a very similar provision in the Model Probate Code,[10] we look to the Introductory Comments accompanying that provision in order to discern its purpose.

The purpose of this section, as revealed in the Introductory Comments, is two-fold. First, it abolishes testamentary guardianships, requiring instead judicial appointment of guardians in all cases. Introductory Comments, *Problems in Probate Law, supra* note 9, at 184. Second, it abolishes

---

**9.** Perhaps the best capsulation of the significance of a finding of "voidable", as opposed to "void" or "void *ab initio*", is contained in the following:

"A judgment or decree which is voidable, as being erroneous, is not a nullity. Until superseded, reversed, or vacated, it is valid, is binding everywhere, has all the attributes and consequences of a valid adjudication, *and affords complete protection to one who acts in reliance upon the adjudication.*" (Emphasis in original) *Laird v. Vogel* (1976) Fla.Dist.Ct. App., 334 So.2d 650, 651.

**10.** The relevant section states:

**"§ 199.  Jurisdiction; non-statutory guardianships abolished.** The jurisdiction of the [ ] court over all matters of guardianship, other than guardianships ad litem, shall be exclusive, subject to the right of appeal. All forms of guardianship not expressly provided for in this Code, other than guardianships ad litem, are abolished." *Model Probate Code* § 196, *reprinted in Problems in Probate Law, Model Probate Code Committee of the American Bar Association* 192 (1946).

the power of a court of equity to appoint a guardian, vesting that power solely in the probate courts. *Id.* De facto guardianships, on the other hand, are mentioned but are not identified as an object of the provision. In fact, the Comments indicate that any dispute by either the party acting as *de facto* guardian or by the incompetent upon becoming competent "proceeds upon ordinary principles of the law of torts or restitution." *Id.* at 183. Under Indiana guardianship law, an objection to the final accounting of a guardian *de jure* also proceeds on ordinary tort principles. Therefore, the Comments indicate that a *de facto* guardian is accountable in the same way as is a guardian *de jure,* an implicit recognition of *de facto* guardianships. The Comments' summary of the purpose of § 199—and therefore of I.C. § 29-1-18-4—is as follows: "Court appointment is required for all guardians and the power to appoint is vested solely in the court having probate jurisdiction." *Id.* at 189. Accordingly, I.C. § 29-1-18-4 does not abolish *de facto* guardianships in Indiana.

■ Our courts have not developed the law of *de facto* guardianships sufficiently to serve us as a guide. Therefore, we turn for assistance to the law of other states that also have recognized *de facto* guardianships. In *Grauman v. Chambers* (1948) 122 Mont. 31, 198 P.2d 629, the would-be ward complained, correctly, that she was given no notice of the time and place of the guardianship hearing and consequently did not appear. The court agreed and granted her petition to set aside the guardianship, and declared that a *de facto* guardianship had been created in the interim. *Id.,* 198 P.2d at 632. Regarding the duties of a *de facto* guardian, the court stated that:

> "A de facto guardian ... will be held subject to all duties and liabilities of a guardian.... his rights will be recognized so far as to entitle him to an equitable order for expenditures which were made for the ward, and which would have been allowed had the guardian been a legal one." *Id.*

It is therefore apparent that the duties of a *de facto* guardian are the same as those of

a guardian *de jure* during the period of guardianship. The same is true with regard to the *de facto* guardian's liability and accountability during the guardianship:

> "Treating an administrator who has acted as a guardian ... as if he were actually appointed as such, means only holding him to such liability as he would have incurred if he had been really appointed. This judicial treatment of such a person is the most favorable to the interests of the ward, but it certainly does not follow that, if such a person makes payments out of the funds which belong to the ward, for the best interests of the ward, such as any court having jurisdiction would allow or direct him to make, he is to be denied all credit for such payments." *In re Gilfillen's Estate* (1895) 170 Pa. 185, 32 A. 585, 586.

Finally, we turn to an Indiana case which both parties cite in support of their respective views on this subject. In *Jessup v. Jessup, supra,* 17 Ind.App. 177, 46 N.E. 550, the court appointed a guardian to administer the trust for a ward who was adjudged incompetent. The ward subsequently challenged the proceedings and the court found that "said proceedings were without the issuing or service of any process or notice on the said Jessup, and that he was not personally present in court." 46 N.E. at 550. However, the court affirmed the trial court's approval of the guardian's expenditures, stating:

> "That all the doings of said guardians ... were done by each of them in a fair and prudent manner, in good faith, and under the belief that their said appointments by the Greene circuit court were regular and lawful...." 46 N.E. at 551.

Trook cites *Jessup* to support her argument that the appointment with defective notice was void and not merely voidable. The *Jessup* court did indeed label the appointment "void," yet treated it as if it were voidable. In this instance, we choose substance over form.

If the *Jessup* appointment truly was functionally (and not merely nominally) "void," then, in light of the foregoing discussion, it would have had no legal effect with respect to the court's ultimate reme-

dy. Yet, the appellate court's remedy was significantly influenced by its findings that the guardians believed the appointments were "regular and lawful," (46 N.E. at 551) and that the guardians were acting "under color of right." 46 N.E. at 553. Clearly, the appointment was *not* a nullity, but was very much a factor in the court's disposition.

We conclude that Indiana law recognizes *de facto* guardianships when, as here, it is not contended that the guardian acted fraudulently or in bad faith,[11] and when the guardian acted under color of right. The duty owed by a *de facto* guardian is succinctly stated in the following: "When a de facto guardian acts in good faith and discharges the duties which would have rested upon him if he had been a legal guardian, he is entitled to charge proper expenditures against the funds in his hands." *Kelly v. Kelly* (1931) 89 Mont. 229, 297 P. 470, 473. In so concluding, we acknowledge that the guardian is not blameless in failing to discover the defect in its appointment. *See Jessup, supra,* 46 N.E. at 553. Nevertheless, we "will not lend [our] aid to hold them personally liable for doing the very things that the court declares to have been done in the best interest of the [ward], and for [whom] they were presuming to act." *Id.*

Finally, we note, that Trook is not without recourse should she wish to challenge any or all of the expenditures authorized by Bank. Her remedy in that event is the same remedy available to any ward who is dissatisfied with the guardian's accounting. *See In re Kitchen* (1909) 45 Ind.App. 524, 89 N.E. 375; *Alcon v. Koons* (1907) 42 Ind.App. 537, 82 N.E. 92, *modified,* 42 Ind. App. 537, 84 N.E. 1104 (1908).

The judgment is affirmed.

SHIELDS and BUCHANAN, JJ., concur.

---

11. Trook freely acknowledges that fraud and bad faith on Bank's part are not issues in this case: "[C]learly [there was] no fraud nor was there any act on the part of [Bank] which would evidence an intent or tendency to deceive [Trook] in obtaining her property...." Reply Brief of Appellant at 6.