**In re the PATERNITY OF P.E.M.**

**Salvator Thomas Mazza, Appellant–Respondent,**

**v.**

**Norman L. Merkler and Jeannie B. Merkler, Appellee–Petitioner.**

**No. 49A02–0402–JV–166.**

Court of Appeals of Indiana.

Nov. 22, 2004.

William J. Rawls, Indianapolis, IN, Attorney for Appellant.

Kimberly A. Jackson, Jensen & Associates, Indianapolis, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Respondent, Salvator Thomas Mazza (Mazza), appeals the trial court's Findings of Fact and Conclusion of Law in favor of Appellees–Petitioners/Intervenors, Norman L. Merkler and Jeannie B. Merkler (collectively, the Merklers), with regard to grandparental visitation rights.

We affirm.

### ISSUES

Mazza raises four issues on appeal, which we restate as follows:

(1) Whether the trial court abused its discretion by denying Mazza's petition for modification of the Merklers' grandparental visitation rights;

(2) Whether the trial court abused its discretion in failing to award attorney's fees to Mazza after the Merklers withdrew their petition to modify custody on the day of the hearing;

(3) Whether the trial court abused its discretion by refusing to admit multiple police reports under the public records exception to the hearsay rule; and

(4) Whether the trial court erred when it found Mazza in contempt for violating the trial court's grandparental visitation order.

### FACTS AND PROCEDURAL HISTORY

On September 3, 1993, the Marion Superior Court, Juvenile Division, issued a Paternity Decree declaring Mazza to be the father of P.M., born on October 29, 1992. Initially, primary custody was awarded to Susan Merkler (Susan), P.M.'s mother. During P.M.'s first seven years of life, she and Susan lived primarily with the Merklers, P.M.'s maternal grandparents. Susan's mental illness, and her resulting erratic and violent behavior, prompted Mazza to seek custody of P.M. in 1998. In response, the Merklers filed an emergency petition for custody, which was granted by the trial court. They continued to have legal custody of P.M. until June 1, 2000, when the trial court awarded custody to Mazza. Since that time, P.M. has lived with Mazza, his girlfriend, and their daughter in Brown County.

In 2001, the Merklers sought and obtained visitation rights pursuant to the Indiana Grandparent Visitation Act, Ind. Code § 31–17–5–1. By its Order of April 23, 2001 (2001 Order), the trial court awarded the following visitation rights to the Merklers:

> [the Merklers] are awarded visitation rights. They shall consist of the second weekend each month during which [Susan] has visitation rights and one evening per week, in alternate weeks, during which [Susan] has mid week visitation pursuant to the Parenting Time Guidelines adopted by the Indiana Supreme Court. [Susan] shall not be prohibited from visiting with the child during the above times set forth.

> Moreover, [the Merklers] shall have visitation rights during one week during the summer, to be decided by May 1 of each year, and three days during the child's winter break from school. The aforementioned visitation period shall be in addition to those provided to [Susan] pursuant to the Parenting Time Guidelines adopted by the Indiana Supreme Court.

(Appellee's App. pp. 11–12). The 2001 Order further prohibited Danny Merkler, the Merklers' son, from being present during the visitation.

Almost immediately after the entry of the trial court's 2001 Order, Susan and the

Merklers experienced problems exercising their visitation rights. They claimed Mazza was actively preventing them from seeing P.M. Consequently, on February 25, 2002, the Merklers filed a petition to modify custody in an attempt to regain custody of P.M. On March 18, 2002, after a pre-trial conference, the trial court found that Mazza failed to abide by the visitation order. In its Order, issued on the same day, the trial court reiterated the Merklers' right to visitation and ordered the make up of lost visitation. After a custody evaluation was conducted, the Merklers withdrew their petition to modify custody. On October 22, 2003, following final hearings respectively on December 23, 2002 and September 3, 2003, the trial court entered its Findings of Fact and Conclusion of Law. In its Order, the trial court repeated the Merklers' grandparental visitation rights, as stipulated in its 2001 Order, and found Mazza in contempt for interfering with the Merklers visitation.

Mazza now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Petition for Modification of Grandparent's Visitation Rights

Mazza first contends that the trial court abused its discretion by affirming the Merklers' right to grandparental visitation, as set forth in its 2001 Order. Specifically, Mazza claims that since the trial court's 2001 Order was not properly supported by findings of fact and conclusions of law, it is void. Thus, Mazza continues, the trial court cannot now, in its Order of October 22, 2003, re-affirm the non-enforceable 2001 Order. Conversely, the Merklers argue that Mazza has waived his right to attack the 2001 Order by virtue of his failure to directly appeal from the order and therefore, he cannot now, by way of a collateral attack, challenge the validity of the trial court's 2001 Order.

We have recognized before that the terms 'void' and 'voidable' are frequently used interchangeably, without due regard for the technical difference between their meanings. *See Trook v. Lafayette Bank and Trust Co.*, 581 N.E.2d 941, 944 (Ind.Ct.App.1991).

> *Void* in the strict sense means that an instrument of transaction is nugatory and ineffectual so that nothing can cure it; *voidable* exists when an imperfection or defect can be cured by the act or confirmation of him who could take advantage of it.

*Black's Law Dictionary,* 812 (abridged 5th ed.1983). 'Void' therefore may only be properly used when the action or subject matter it describes is of no effect whatsoever, and is incapable of confirmation or ratification. *See Trook,* 581 N.E.2d at 944. 'Voidable,' on the other hand, describes an action or subject matter which nonetheless operates to accomplish the thing sought to be accomplished, until the fatal flaw is judicially ascertained and declared. *See id.* A judgment (or appealable order) that is voidable may only be attacked through a direct appeal, whereas a void judgment is subject to collateral attack. *Id.*

In the instant case, Mazza asserts that the 2001 Order should be declared void because it lacks proper findings of facts and conclusions of law pursuant to I.C. § 31–17–5–6, which provides: "[u]pon hearing evidence in support of an opposition to a petition filed [for Grandparent's Visitation], the court shall enter a decree setting forth the court's findings and conclusions." In support of his argument, Mazza refers to our decision in *McCune v. Frey,* 783 N.E.2d 752 (Ind.Ct.App.2003).

In *McCune,* we concluded that under the Grandparent Visitation Act, the trial court

is required to issue findings of fact and conclusions of law when issuing a decree granting or denying grandparent visitation. *Id.* at 757. In clarifying the purpose of this statutory requirement, we noted that

> [i]t is important for parties and the reviewing court to have a clear understanding of how and why the trial court made its decision. It is particularly imperative in a grandparent visitation case because of the tension between a parent's fundamental right to control the upbringing of his or her child, and the fact that a child's best interests are 'often served by developing and maintaining contact with his or her grandparents.'

*Id.* Thus, mindful of the purpose and plain language of I.C. § 31–17–5–6, we held that when entering a decree granting or denying grandparent visitation, the trial court must set forth findings of fact and conclusion of law, addressing:

> 1) the presumption that a fit parent acts in his or her child's best interest; 2) the special weight that must be given to a fit parent's decision to deny or limit visitation; 3) whether the grandparent had established that visitation is in the child's best interests; and 4) whether the parent has denied visitation or has simply limited visitation.

*Id.*

Our review of the trial court's 2001 Order establishes that the trial court merely issued a blanket award of specific grandparent visitation rights to the Merklers without setting forth any findings supporting its conclusion. Therefore, we conclude that the trial court's 2001 Order failed to comply with the statutory requirements of I.C. § 31–17–5–6.

Nevertheless, as we stated in *McCune*, any relief granted on the trial court's failure to properly issue findings of fact and conclusions of law is in the form of a remand to the trial court, with instructions to enter more specific findings and conclusions. *See id.* at 757. Consequently, based on our reasoning in *McCune*, we now acknowledge that, although a defect can exist in the trial court's Order when it lacks findings of fact and conclusions of law, this is merely a defect in form, or procedural irregularity, which is capable of being cured. *See Trook*, 581 N.E.2d at 944. As a result, we conclude that, in the case at bar, a lack of findings of fact in the trial court's 2001 Order is voidable and therefore, can only be challenged through a direct appeal. *Id.* Here, the record indicates that Mazza did not appeal the trial court's 2001 Order. In effect, the first time he even raises a challenge to the trial court's 2001 Order is during the current appeal. Accordingly, because he failed to directly appeal the 2001 Order, he has now waived his right to challenge it. *See* Ind. Appellate Rule 9(A).

## II. *Attorney's Fees*

Next, Mazza asserts that the trial court abused its discretion by refusing to award him attorney's fees. In particular, Mazza alleges that an award of attorney's fees pursuant to I.C. § 34–52–1–1 is proper since the Merklers withdrew their petition to modify custody on the day of trial.

With regard to attorney's fees, we have a two-tiered standard of review. Initially, we review the trial court's findings of fact under the clearly erroneous standard. *Kahn v. Cundiff*, 533 N.E.2d 164, 167 (Ind.Ct.App.1989), *aff'd*, 543 N.E.2d 627, 629 (Ind.1989). We subsequently review *de novo* the trial court's legal conclusion that a party either (1) brought an action or defense on a claim or defense that is frivolous, unreasonable or groundless, or (2) continued to litigate the action or defense after the party's claim or

defense clearly became frivolous, unreasonable or groundless, or (3) litigated in bad faith.

Under I.C. § 34–52–1–1(b), a court may award attorney's fees to the prevailing party, if the court finds that either party:

(1) brought the action or defense on a claim or defense that is frivolous, unreasonable or groundless;

(2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or

(3) litigated the action in bad faith.

I.C. § 34–52–1–1. However, as a threshold requirement of this general recovery rule, a claimant must show that he is the prevailing party, as identified by I.C. § 34–52–1–1(a), which states that "[i]n all civil actions, the party recovering judgment shall recover costs, . . ." Thus, a prevailing party is one that recovers a judgment. *D.S.I. v. Natare Corp.*, 742 N.E.2d 15, 24 (Ind.Ct.App.2000), *trans. denied.* In *State Wide Aluminum, Inc. v. Postle Distributors, Inc.*, 626 N.E.2d 511, 516–17 (Ind.Ct.App.1993), *reh'g denied, trans. denied,* we affirmed the trial court's denial of attorney's fees where the requesting party claimed that it had received a judgment when its opponent failed to pursue a motion to appoint a receiver. Likewise, here, we decline to find Mazza a prevailing party because the Merklers did not pursue their motion to modify custody through further litigation. Instead, they withdrew their motion on the day of the hearing.

Furthermore, even assuming *arguendo,* that the Merklers' request to withdraw their motion on the day of trial resulted in a ruling in Mazza's favor, the trial court's grant to withdraw a motion is not a judgment within the meaning of I.C. § 34–52–1–1. *See D.S.I.,* 742 N.E.2d at 24 (where we held that a ruling on a motion is not a judgment under I.C. § 34–52–1–1). Accordingly, we hold that the trial court did not err in denying Mazza's request for attorney's fees.

### III. *Admission of Police Reports*

Mazza contends that the trial court abused its discretion when it failed to admit multiple police reports into evidence. Specifically, Mazza argues that police reports may be admitted as an exception to the hearsay rule when the information contained therein is based on the personal knowledge of the police officer who is under a duty to report the fact. We disagree.

We review a trial court's ruling to exclude or admit evidence under an abuse of discretion standard. *Pickens v. State,* 764 N.E.2d 295, 297 (Ind.Ct.App. 2002). An abuse of discretion occurs if a trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Joyner v. State,* 678 N.E.2d 386, 390 (Ind.1997), *reh'g denied.*

While we acknowledge that Indiana Evidence Rule 803 defines several exceptions to the hearsay rule, it nevertheless specifically excludes investigative reports by police and other law enforcement personnel, unless the reports are offered by an accused in a criminal case. Clearly, in the instant civil case, Mazza is the responding party, not a defendant. Therefore, we conclude that the trial court properly refused to admit the proffered police reports into evidence. *See* Evid. R. 803(8); *Joyner,* 678 N.E.2d at 390.

### IV. *Contempt*

Finally, Mazza claims that the trial court abused its discretion by finding him in contempt for violating the trial court's

2001 Order, establishing grandparental visitation rights. Mazza maintains that by agreement of the parties, the sole issue before the trial court at the September 3, 2003 hearing was Mazza's motion regarding the Merklers' visitation schedule. He further argues that since the trial court last decided the contempt issue on December 23, 2002, no new evidence of contempt was submitted to the trial court.

▬ The determination of whether a party is in contempt of court is a matter within the trial court's discretion. *Williamson v. Creamer*, 722 N.E.2d 863, 865 (Ind.Ct.App.2000). We will reverse the trial court's finding of contempt only where an abuse of discretion has been established. *Id.* A trial court abuses its discretion when its decision is against the logic and effect of the facts and circumstances before the court or is contrary to law. *Id.* When reviewing a contempt order, we will neither reweigh the evidence nor judge the credibility of witnesses. *Id.*

▬ In order to be punished for contempt of a court's order, there must be an order commanding the accused to do or refrain from doing something. *Id.* (quoting *Adler v. Adler*, 713 N.E.2d 348, 354 (Ind.Ct.App.1999)). To hold a party in contempt for a violation of a court order, the trial court must find that the party acted with "willful disobedience" *Id.* (quoting *In re Marriage of Glendenning*, 684 N.E.2d 1175, 1179 (Ind.Ct.App.1997), *trans. denied*).

Mazza now alleges that there was no evidence before the trial court establishing that he willfully disobeyed the Merklers' visitation rights since all issues had been resolved in the trial court's December 23, 2002 Order. We find Mazza's argument to be without merit.

▬ Our review of the trial court's Findings of Fact and Conclusion of Law,

dated October 22, 2003, clearly establishes that the issue of grandparental visitation rights was before the trial court. In particular, the Order stipulates the following:

> The matter comes before the [c]ourt upon all pending motions, including 1) [Mazza's] Verified Petition for Emergency Modification of Visitation filed 12/14/01; ... 3) [the Merklers'] Response to Verified Petition for Emergency Modification of Visitation filed 12/20/01; 4) [the Merklers'] Verified Affidavit for Contempt filed 1/4/02; 5) [the Merklers'] Verified Petition to Modify Custody filed 2–25–02.... At the hearing, the Merklers orally moved to dismiss their Petition to Modify Custody, which motion was granted. However, the Merklers and [Mazza] stipulated that the Merklers' grandparent visitation was still at issue and agreed to present evidence on this issue and to have the court rule upon it. The Merklers and [Mazza] waived in open court any right to contest any procedural defects involved with regard to hearing grandparent visitation issues.

(Appellee's App. pp. 118–19). Additionally, the record indicates that both parties understood and agreed that only facts after the trial court's previous Order of December 23, 2002 would be admitted into evidence. Since Mazza expressly waived any procedural errors regarding the grandparent visitation rights, he cannot now assert error on the part of the trial court. Thus, the only issue open for our review concerns whether sufficient evidence existed to find Mazza in contempt.

Our review of the record supports that Mazza willfully disobeyed the Merklers' visitation rights, as stipulated in the 2001 Order. Testimonial evidence indicates that at times, Mazza refused all visits between the Merklers and P.M. The Merklers testified that on several occasions,

Mazza insisted that they exercise their visitation at a specific location in Franklin, under his supervision. As the Merklers correctly point out, the 2001 Order does not authorize Mazza to control the location of the visits or require him to act as a supervisor. Furthermore, the record shows that Mazza refuses to comply with the 2001 Order by denying the Merklers any input in their summer visitation schedule and by arbitrarily designating which weekends they may exercise their visitation with P.M. The record reflects that by intentionally allocating weekends to the Merklers that conflict with a holiday, he actively thwarts the grandparents' visits since the 2001 Order awarded all major holidays to Mazza. We agree with the trial court's finding that even though Mazza now claims to accept the 2001 Order with respect to the Merklers' visitation, his history indicates that his promises are disingenuous.

Moreover, the record reveals that Mazza is fully aware of the extent of the Merklers' visitation rights and clearly understands the trial court's 2001 Order. However, the record also supports that Mazza admitted to violating the current grandparental visitation schedule because he believes it to be unreasonable. Thus, instead of seeking redress with the trial court, Mazza willfully chose to disobey the 2001 Order. As we held before, uncontradicted evidence that a party is aware of a court order and willfully disobeys it is sufficient for a finding of contempt. *Williamson,* 722 N.E.2d at 866.

Therefore, based on the evidence before us, we conclude that the trial court's decision is not against the logic and effect of the facts and circumstances before the court. *See id.* at 865. Accordingly, being mindful of the testimonial evidence and Mazza's own admission, we find that the trial court did not abuse its discretion by

finding Mazza in contempt of its 2001 Order. Consequently, we refuse to disturb the trial court's Findings of Fact and Conclusion of law.

## CONCLUSION

Based on the foregoing, we find that (1) since Mazza failed to directly appeal the voidable 2001 Order, he has now waived his right to challenge it; (2) Mazza is not a prevailing party pursuant to I.C. § 34–52–1–1, and thus, is not entitled to attorney's fees pursuant thereto; (3) the trial court did not abuse its discretion by refusing to admit multiple police reports under the public records exception to the hearsay rule; and (4) the trial court properly found Mazza in contempt for violating the grandparental visitation order.

Affirmed.

CRONE, J., and VAIDIK, J., concur.