**Debra Sue WINTERS, Appellant–Respondent,**

v.

**Dennis TALLEY and Angella Talley, Appellees–Petitioners,**

**In re the Adoption of G.S.W.**

**No. 13A01–0209–CV–353.**

Court of Appeals of Indiana.

March 17, 2003.

---

Susan Schultz, Corydon, IN, Attorney for Appellant.

Jennifer A. Tucker, Tucker and Tucker, Paoli, IN, Attorney for Appellee.

## OPINION

MATTINGLY–MAY, Judge.

Debra Sue Winters appeals the trial court's order granting the adoption of her son, G.S.W., without her consent. We find a single issue dispositive: whether there was sufficient evidence presented that Winters was able to provide for the support of G.S.W., but failed to do so.

We reverse.

## FACTS AND PROCEDURAL HISTORY

Winters gave birth to G.S.W. on April 10, 1992. Paternity was never established.

In the fall of 1995, G.S.W. was determined to be a Child In Need of Services. On January 23, 1996, Dennis and Angella Talley ("the Talleys") were granted guardianship of G.S.W. Since that time, G.S.W. has resided with the Talleys. Angella is the daughter of Winters and the brother of G.S.W. One of the reasons the Talleys have custody of G.S.W. is because Winters suffers from a mental illness, which causes her to exhibit psychotic behavior when she occasionally stops taking her medication.

The Talleys filed a petition to adopt G.S.W. on October 22, 2001. The petition acknowledged that Winters did not consent to the adoption. On November 8, 2001, Winters filed an objection to the adoption and requested appointment of legal counsel. The trial court appointed a public defender to represent Winters.

As a result of her disability, Winters receives approximately $550 per month in Supplemental Security Income ("SSI").[1] During the period between October 11, 2000 and October 11, 2001, Winters did not provide any financial support for G.S.W.

Following a hearing on May 17, 2002, the trial court found that Winters' consent to the adoption was not required because she had, for a period of more than one year, failed to provide for the care and support of G.S.W. The trial court granted the Talleys' petition for adoption.

## DISCUSSION AND DECISION

The appropriate standard of review on appeal where an adoption petition has been granted is to consider the evidence most favorable to the petitioner and reasonable inferences which can be drawn therefrom to determine whether sufficient evidence exists to sustain the trial court's

1. Winters testified that her SSI "is either Four Ninety-eight or around Five Hundred and Fifty, somewhere in there." (App. of Appellant at 66.)

decision. *Irvin v. Hood,* 712 N.E.2d 1012, 1013 (Ind.Ct.App.1999). We will not disturb the trial court's decision in an adoption proceeding unless the evidence at trial led to but one conclusion and the trial court reached an opposite conclusion. *Id.* On appeal, we will not reweigh the evidence, but instead will examine the evidence most favorable to the trial court's decision. *Id.*

▬ Winters argues the trial court erred in granting the Talleys' petition for adoption of G.S.W. without her consent. Specifically, Winters claims there was insufficient evidence that she was able to support G.S.W.

In order for a petition for adoption to be granted, the mother's consent is required unless one of the statutory exceptions applies. Ind.Code § 31–19–9–1. Ind.Code § 31–19–9–8(a) provides in pertinent part that:

> Consent to adoption is not required from any of the following:

> \* \* \*

> (2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:
> (A) fails without justifiable cause to communicate significantly with the child when able to do so; or
> (B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.

> \* \* \*

> (7) A parent who has relinquished the parent's right to consent to adoption as provided in this chapter.
> (8) A parent after the parent-child relationship has been terminated under IC 31–35 (or IC 31–6–5 before its repeal).

> (9) A parent judicially declared incompetent or mentally defective if the court dispenses with the parent's consent to adoption.

The trial court found that Winters' consent was not required pursuant to Ind. Code § 31–19–9–8(a)(2)(B) because Winters failed to provide for the care and support of G.S.W. for at least one year. Winters admits that she has not financially supported G.S.W. for more than one year, but argues the evidence presented at trial does not indicate that she had the ability to do so. As stated in *In re Adoption of D.H. III,* 439 N.E.2d 1376, 1377 (Ind.Ct. App.1982), Ind.Code § 31–19–9–8(a)(2)(B) [2] "clearly requires the petitioner to demonstrate that the natural parent had the ability to provide for the support of the child and did not do so. Where this is not shown the evidence must be deemed insufficient to sustain the granting of the petition." Further, the ability to pay must be shown by clear and cogent evidence. *D.H. III,* 439 N.E.2d. at 1378.

As this case involves a parent's nonsupport of a child, we find the manner in which SSI is treated for child support purposes instructive. "SSI is a federal social welfare program designed to assure that the recipient's income is maintained at a level viewed by Congress as the minimum necessary for the subsistence of that individual." *Cox v. Cox,* 654 N.E.2d 275, 277 (Ind.Ct.App.1995). Means-tested public assistance programs such as SSI are specifically excluded from a parent's income for the purpose of computing child support under Ind. Child Support Guideline 3(A)(1). *Id.* Child support may not be set such that the obligor is denied a means of self-support at a subsistence level. *Id.;* Ind. Child Supp. G. 2, cmt. ("Minimum

---

**2.** Formerly Ind.Code § 31–3–1–6(g).

Support"). As a matter of law, SSI recipients lack the money or means to satisfy child support obligations. *See Cox,* 654 N.E.2d at 277 (imputing potential income to SSI recipient father despite his SSI status "effectively constitutes an impermissible collateral attack upon the determination of [f]ather's entitlement to SSI benefits").

The only evidence of Winters' financial means was that she received SSI.[3] For purposes of determining that a parent's consent to adoption is not required, we find that a parent whose only source of income is SSI is not able to provide for the support of the child.[4] Since the Talleys failed to demonstrate by clear and cogent evidence that Winters had the ability to support G.S.W., we reverse the grant of the petition for adoption.

Reversed.

BROOK, C.J., concurs.

FRIEDLANDER, J., dissents with opinion.

**3.** The Talleys assert that in the year prior to filing their petition for adoption, Angella was entitled to a $10,000 scholarship for medical school and that "[a]ll Winters had to do was sign as her parent," but that Winters refused to sign. (Br. of Appellee at 7.) The Talleys fail to offer any explanation as to how Winters' refusal indicates that Winters had the ability to support G.S.W., but failed to do so.

**4.** The dissent places a great deal of emphasis on Winters' testimony that she would currently be able to support G.S.W. if he came to live with her. A review of Winters' testimony reveals that during the adoption hearing, Winters indicated that she desired to have custody of G.S.W. In response to being asked "How would you be able to take care of [G.S.W.] in your present situation?" Winters replied "Well would it, I mean, I have food. I have shelter. I love him. As far as school goes, there is a school bus that passes the apartments." (App. of Appellant at 63.) This statement does not indicate that Winters had the financial ability to support G.S.W. Simply

**FRIEDLANDER, Judge, dissenting.**

I believe that the trial court correctly granted the petition for adoption and therefore respectfully dissent.

In my view, the majority has cobbled together three discrete principles and fashioned thereby what amounts to a new bright-line rule of law. The three principles are: 1) Ind.Code Ann. § 31–19–9–8(a)(2)(B) (West 1998) requires that a petitioner for adoption must show not only that the natural parent did not provide support, but also that he or she was able to so provide; 2) SSI payments represent the absolute minimum necessary for the subsistence of an individual recipient; and 3) SSI, as a means-tested, public-assistance program, is excluded from a parent's income for the purpose of computing child support under Indiana Child Support Guidelines and, therefore, SSI recipients, as a matter of law, cannot be held in contempt for failing to comply with child support orders. *See, e.g., Ward v. Ward,*

because Winters stated that if G.S.W. were to come live with her that she would share her food and her apartment with him, it is not an indication that Winters had additional financial resources to support G.S.W.

Moreover, the fact that Winters has enough money for cigarettes is not determinative. In *D.H. III,* 439 N.E.2d at 1377, the trial court granted an adoption without the father's consent where he had failed to pay his child support of twenty dollars per week. We reversed the granting of the adoption stating that:

> Petitioner's counsel was able to elicit on cross examination that [the father] had money to buy cigarettes and gas. However, standing alone, this is not sufficient to indicate [the father's] ability to pay support of twenty dollars per week, nor can such an inference reasonably be drawn from this evidence. This is an insufficient basis upon which to predicate the court's decision that the consent of the [father] was not needed to effectuate the adoption in this case.

*Id.*

763 N.E.2d 480 (Ind.Ct.App.2002). The new rule created in the instant case dictates that, in the context of I.C. § 31–19–9–8, where a parent's income consists only of SSI payments, a court cannot find that the parent was capable of providing even token financial support for his or her children. In turn, this means that such a parent's consent is always required for adoption, regardless of the duration of the period of nonsupport, and without respect to any other factors. I do not believe that I am overstating the essence of the majority's holding, and I think it goes too far.

I believe it is a mistake to commingle the principles applicable to SSI in the context of child support with the principles applicable to SSI income under I.C. § 31–19–9–8. In the former circumstance, the court is *prospectively* concerned with a parent's obligation and ability to pay child support. In such cases, the court must determine how much a parent will predictably be able to contribute toward the support of his or her child in the future. In the latter case, on the other hand, the court is attempting to assess the level of a parent's *past* involvement with a child, in order to determine whether that parent has, in effect, preserved a right to have a voice in a third party's effort to adopt the child.

When determining whether a natural parent has preserved the right to render or refuse consent under I.C. § 31–19–9–8, our courts have heretofore focused not so much on the amount of support paid as they have on whether the natural parent has contributed to the greatest extent possible. I believe the rule fashioned by the majority in the instant case departs from that approach. In so doing, the focus of the inquiry has been disconnected from its primary goal, which is to gauge the parent/child relationship by assessing the level of the parent's voluntary involvement with the child. I would adhere to an approach that requires courts to consider more than just the nature of the parent's resources, whatever that may be. I believe we should consider *all* of the facts, especially whether the natural parent had sufficient resources to purchase nonessential items for his or her own use. Such would focus not only upon the parent's own financial needs, but also upon the amount available for discretionary spending, if any.

Winters testified that SSI was her sole source of income. She claims upon appeal that such did not provide sufficient income to do more than provide for her own necessities. Yet, she also claimed that she would currently be able to support G.S.W. if he came to live with her. I am at a loss to understand how Winters would be able to take G.S.W. into her home without the need to spend more than she currently spends on herself alone. To the contrary, Winters's representation means to me that she has money to spend on G.S.W., however much that may be, but opts instead to spend it on herself. In fact, she confirmed that she has discretionary income sufficient at least to support her cigarette habit. This means that, at a minimum, she had the ability to contribute money to G.S.W.'s support equal to that which she spent every month to continue smoking, but chose instead to spend it on cigarettes. That choice, and what it reveals, is at the heart of the inquiry that courts should conduct under I.C. § 31–19–9–8.

I note one final reason to reject strict adherence to the principle that a failure to offer even token financial support may not be considered under I.C. § 31–19–9–8 where SSI payments constitute a natural parent's only income: it is inconsistent with the guiding principle that overarches the entire adoption proceeding, viz., the best interests of the child. *See* I.C. § 31–19–11–1(a)(1); *see also Stout v. Tippeca-*

*noe County Dept. of Public Welfare,* 182 Ind.App. 404, 395 N.E.2d 444, 448 (1979) ("[t]he paramount consideration in any adoption proceeding is ... the best interest of the child"). I am aware that, in an adoption proceeding where parental consent has not been obtained, a consideration of the child's best interest does not occur until one of the statutory grounds for dispensing with parental consent has been proven. *See In re Adoption of J.P.,* 713 N.E.2d 873 (Ind.Ct.App.1999). Yet, we must be mindful of the "best interests" consideration when we construe the meaning of I.C. § 31–19–9–8 and decide how its terms are to be applied. *Cf. In re Adoption of J.P.,* 713 N.E.2d 873 (Ind.Ct.App. 1999) (construing subsection (b) of I.C. § 31–19–9–8, which obviates the need for parental consent in the event that a parent abandoned a child or provided only token communication for the requisite time period). In *In re Adoption of J.P.,* we observed, "A determination of abandonment justifying obviation of the requirement of consent to an adoption should receive liberal construction so that children who have been denied the benefits of a home and parental care may receive those benefits[.]" *In re Adoption of J.P.,* 713 N.E.2d at 876.

I believe that the record demonstrates that Winters had the ability to contribute to the financial support of G.S.W., but failed to do so for a period in excess of one year. Therefore, her consent was not required with respect to the adoption proceeding initiated by the Talleys. I would affirm the trial court.