938 N.E.2d 278 (2010)
M.S., Appellant,
v.
C.S., Appellee.
No. 03A01-1003-DR-140.
Court of Appeals of Indiana.
December 7, 2010.
*280 J. Grant Tucker, Nathan P. Patterson, Jones Patterson & Tucker, Columbus, IN, Attorneys for Appellant.
Richard D. McGillivray, McGillivray Law Office, LLC, Columbus, IN, Attorney for Appellee.

OPINION
MATHIAS, Judge.
The Bartholomew Superior Court vacated its previous order granting M.S. joint legal custody of and parenting time with *281 S.S., a child born to C.S., M.S.'s former domestic partner. M.S. appeals and raises three issues, which we reorder and restate as follows:
I. Whether the trial court erred in vacating its prior custody and visitation order;
II. Whether the trial court abused its discretion by modifying custody of S.S. without a petition to modify or a showing of a substantial change in circumstances; and
III. Whether the trial court abused its discretion in denying M.S. parenting time.
We affirm.

Facts and Procedural History
M.S. and C.S. lived together in a same-sex relationship for more than ten years. During the relationship, C.S. was artificially inseminated with donor semen and gave birth to a daughter, S.S., in 2003. In August 2007, M.S. and C.S. sought to establish a legal relationship between M.S. and S.S. by filing a "Joint Petition to Determine Custody." In the petition, M.S. and C.S. agreed that they should have joint legal custody, with C.S. as the primary physical custodian, and that M.S. should have parenting time as agreed by the parties or, in the event that they could not agree, in accordance with the Indiana Parenting Time Guidelines.[1] On September 5, 2007, the Bartholomew Superior Court entered an order providing for custody and parenting time as set forth in the petition.
On April 21, 2009, M.S. and C.S. ended their relationship after a heated argument during which M.S. physically attacked C.S. and threatened C.S.'s life in the presence of S.S. At a hearing held on May 4, 2009, the trial court concluded that it had had no legal basis to enter the September 5, 2007 order, and therefore voided the order without a request to do so by either party. On May 8, 2009, C.S. filed a "Revocation of Any and All Consents to Joint Custody of the Minor Child." M.S. subsequently filed a motion to reinstate the September 5, 2007 order and a motion to certify the court's May 4, 2009 ruling for an interlocutory appeal. At a hearing on November 5, 2009, the trial court reinstated the September 5, 2007 order, suspended M.S.'s parenting time, and set the matter for an evidentiary hearing.
The hearing was held on January 28, 2010, and at the conclusion of the evidence, the trial court ordered that M.S.'s parenting time was to remain suspended. Additionally, the trial court gave M.S.'s counsel until February 8, 2010, to file a trial brief supporting M.S.'s contention that she is entitled to joint custody and parenting time, and gave C.S.'s counsel time to file a response. On February 26, 2010, after reviewing the trial brief and response, the trial court issued an order vacating the September 5, 2007 order. M.S. now appeals.

Standard of Review
It appears that the trial court entered findings and conclusions sua sponte. Thus, when reviewing the specific findings and conclusions thereon, we must first determine whether the record supports the factual findings, and then whether the findings support the judgment. Bryant v. Bryant, 693 N.E.2d 976, 977 (Ind.Ct.App. 1998), trans. denied. On appeal, we will not set aside the findings or judgment unless they are clearly erroneous, and "due regard shall be given to the opportunity *282 of the trial court to judge the credibility of witnesses.'" K.I. ex rel. J.I. v. J.H., 903 N.E.2d 453, 457 (Ind.2009) (quoting Ind. Trial R. 52(A)). We therefore consider only the evidence favorable to the judgment and the reasonable inferences flowing therefrom, and we will neither reweigh the evidence nor assess witness credibility. Bryant, 693 N.E.2d at 977. A judgment is clearly erroneous when there is no evidence to support the findings, the findings do not support the judgment, or the trial court applies the wrong legal standard to properly found facts. K.I., 903 N.E.2d at 458.
However, because the trial court entered findings and conclusions sua sponte, the specific findings control only as to the issues they cover, and a general judgment standard applies to those issues on which the trial court has not found. Bryant, 693 N.E.2d at 977. We may affirm a general judgment on any theory supported by the evidence of record. Id. We review questions of law de novo. In re Paternity of E.M.L.G., 863 N.E.2d 867, 868 (Ind.Ct.App.2007).

I. The September 5, 2007 Order
M.S. argues that the September 5, 2007 order was properly entered pursuant to Indiana Code section 31-17-2-3 (2008) and that the trial court erred in concluding that C.S.'s withdrawal of consent to the custody and visitation arrangement was sufficient to vacate the September 5, 2007 order. C.S. responds that the September 5, 2007 order was properly vacated, not only because C.S. withdrew her consent, but because the order was void on its face.

A. Indiana Code section 31-17-2-3

M.S. first asserts that the "Joint Petition to Determine Custody" was properly filed under Indiana Code section 31-17-2-3, and that the resulting September 5, 2007 order was therefore properly entered and legally binding. The interpretation of a statute is a pure question of law and is reviewed under a de novo standard. Herron v. State, 729 N.E.2d 1008, 1010 (Ind.Ct.App.2000), trans. denied. In construing a statute, our primary goal is to determine and effectuate the legislative intent. Neal v. DeKalb County Div. of Family and Children, 796 N.E.2d 280, 284 (Ind.2003). "Statutes which relate to the same general subject matter are in pari materia and should be construed with reference to each other so as to harmonize and give effect to the provisions of each." Collins v. State, 275 Ind. 86, 100, 415 N.E.2d 46, 56 (1981).
Indiana Code section 31-17-2-3 provides that a child custody proceeding is commenced by:
(1) a parent by filing a petition under IC XX-XX-X-X, IC XX-XX-X-X, or IC XX-XX-X-X; or
(2) a person other than a parent by filing a petition seeking a determination of custody of the child.
Here, however, C.S.'s and M.S.'s "Joint Petition to Determine Custody" sought to establish a shared custody arrangement. We conclude that under the terms of Indiana Code section 31-17-2-3, the General Assembly did not intend to allow parents to establish joint custody with third parties by simply filing a joint petition with a trial court, because to do so would allow parents and third parties to circumvent the requirements of the Adoption Act.
Adoption creates a parent-child relationship between individuals who would not otherwise share such a relationship. Stepparent adoption allows a stepparent to adopt the biological child of his or her spouse without divesting the spouse of parental rights to the child. Ind.Code § 31-19-15-2 (2008). This court has interpreted *283 the stepparent adoption statute to allow a biological mother's children to be legally adopted by her same-sex domestic partner without divesting the biological mother of her parental rights. In re Adoption of K.S.P., 804 N.E.2d 1253, 1260 (Ind.Ct.App. 2004); see also Mariga v. Flint, 822 N.E.2d 620, 626-28 (Ind.Ct.App.2005), trans. denied.
The General Assembly has set forth specific procedural prerequisites to adoption in the Indiana Code. For example, for a child born out of wedlock, an adoption petition may be granted only if a written consent to the adoption has been executed by the mother and, under certain circumstances, the father. Ind.Code § 31-19-9-1(a)(2) (2008).[2] It is well established that adoption statutes are in derogation of the common law and must therefore be strictly construed as to all procedural requirements. J.M. v. M.A., 928 N.E.2d 230, 236 (Ind.Ct.App.2010); In re Petition of Gray, 425 N.E.2d 728, 730 (Ind.Ct.App. 1981).
Indiana Code section 31-17-2-3 and the adoption statutes cover the same general subject matter and must therefore be construed together. To permit C.S. and M.S. to use Indiana Code section 31-17-2-3 to create parental and custodial rights to S.S. simply by filing a joint petition to do so would circumvent the public policy behind, and the procedural requirements of, the adoption statutes. We conclude that Indiana Code section 31-17-2-3 does not contemplate the creation of a shared custody arrangement between a parent and a nonparent, regardless of the consent of the parties. The original entry of the September 5, 2007 order was therefore erroneous.

B. Indiana Code section 31-15-2-17

M.S. next argues that the September 5, 2007 order was binding on the parties because they consented to its entry. In support of this argument, M.S. directs our attention to Tirey v. Tirey, 806 N.E.2d 360, 364 (Ind.Ct.App.2004), trans. denied, and Schueneman v. Schueneman, 591 N.E.2d 603, 611 (Ind.Ct.App.1992), for the general proposition that parties to a divorce are free to agree to the custody and support of their children, and such an agreement is binding on the parties once it becomes part of a court order, even if the trial court would otherwise lack the authority to order the parties to do as they agree.
However, these cases are readily distinguishable from the case before us. Both took place within the context of a divorce and relied on Indiana Code section 31-15-2-17 (2008), which provides that parties to a divorce may agree to the custody and support of their children, and if such an agreement is approved by the court, it becomes part of the divorce decree and "the parties shall be ordered to perform the terms[.]" Id. By its own terms, Indiana Code section 31-15-2-17 applies only in the context of a divorce, and is therefore inapplicable to the case before us.
M.S. suggests that we should extend Indiana Code section 31-15-2-17 to cover the situation before us because the protections provided by the dissolution statutes "should apply to all children, regardless of whether they happened to be born into a more traditional family or if they were born into a less traditional family." Appellant's *284 Br. at 10. While we are mindful of the needs of children born into nontraditional families, we must also interpret the statute according to its plain and ordinary meaning. We must also are further constrained to leave the public policy determinations attendant to the regulation of legal relationships within nontraditional families to the legislative branch of our government, the General Assembly. We therefore decline M.S.'s invitation to extend Indiana Code section 31-15-2-17 beyond its plain language.

C. Void or Voidable

We now turn our attention to whether the September 5, 2007 order was void or voidable. "The distinction between a void and voidable judgment is no mere semantic quibble." Stidham v. Whelchel, 698 N.E.2d 1152, 1154 (Ind.1998). A voidable judgment or order may be attacked only through a direct appeal, whereas a void judgment is subject to direct or collateral attack at any time. In re Paternity of P.E.M., 818 N.E.2d 32, 36 (Ind.Ct.App. 2004); Beanblossom v. State, 637 N.E.2d 1345, 1349 (Ind.Ct.App.1994), trans. denied. Thus, if the September 5, 2007 order was merely voidable, C.S. waived her right to challenge the order by failing to file a direct appeal.
We have noted that the terms "void" and "voidable" have been frequently used interchangeably, without due regard for the technical difference between their meanings. Trook v. Lafayette Bank and Trust Co., 581 N.E.2d 941, 944 (Ind.Ct. App.1991), trans. denied. "[v]oid in the strict sense means that an instrument or transaction is nugatory and ineffectual so that nothing can cure it; voidable exists when an imperfection or defect can be cured by the act or confirmation of him who could take advantage of it." Id. (quoting BLACK'S LAW DICTIONARY 812 (abridged 5th ed.1983) (emphasis and alteration in original)).
Thus, an order is "void" only "when the action or subject matter it describes is of no effect whatsoever, and is incapable of confirmation or ratification." Id. "Voidable," however, "describes an action or subject matter which nonetheless operates to accomplish the thing sought to be accomplished, until the fatal flaw is judicially ascertained and declared." Id. Accordingly, in P.E.M., this court determined that an order granting visitation under the Grandparents Visitation Act failed to comply with the statutory requirement that the trial court set forth findings of fact and conclusions of law. 818 N.E.2d at 36. However, because the defect was merely "in form" or a "procedural irregularity, which is capable of being cured," the visitation order was deemed merely voidable. Id. Cf. Beanblossom, 637 N.E.2d at 1349 (court order modifying defendant's sentence was void because the court lacked statutory authority to modify defendant's sentence without the approval of the prosecuting attorney).
Here, however, the entry of the September 5, 2007 order was no mere procedural error. Rather, as we noted above, the trial court lacked the authority to grant the joint petition under Indiana Code section 31-17-2-3 under any set of circumstances, and the error was therefore impossible to cure. We conclude that the September 5, 2007 order was void ab initio and without legal effect, and consequently remains vulnerable to C.S.'s collateral attack. See Beanblossom, 637 N.E.2d at 1349 ("A judgment may be void for want of authority in a court to render the particular judgment though the court may have had jurisdiction over the subject matter and the parties."). For all of these reasons, the trial court properly vacated the September 5, 2007 order.

*285 II. Modification
M.S. next argues that the trial court abused its discretion by modifying the custody and parenting time schedule set out in the September 5, 2007 order without a petition to modify or a showing of a substantial change in circumstances. See Ind. Code § 31-17-2-21 (2008) (providing that a court may not modify an existing child custody order without a showing that the modification is in the child's best interests and a substantial change in one or more listed factors). However, as noted above, the September 5, 2007 order was void ab initio and, therefore, a legal nullity. Because the September 5, 2007 order was void, there was no legally effective custody or parenting time schedule to modify. Accordingly, M.S.'s argument must fail.

III. Parenting Time
M.S. finally argues that even absent the September 5, 2007 order, she is entitled to parenting time with S.S. When reviewing a trial court's determination of a parenting time issue, we grant deference to the trial court and reverse only for an abuse of discretion. Gomez v. Gomez, 887 N.E.2d 977, 983 (Ind.Ct.App.2008). No abuse of discretion occurs if a rational basis supports the trial court's determination. Id. Thus, it is not enough on appeal that the evidence might support some other conclusion; rather, it must positively require the conclusion advanced by the appellant. Id. On appeal, we neither reweigh the evidence nor judge the credibility of witnesses. Id. "In all parenting time issues, courts are required to give foremost consideration to the best interest of the child." Id.
Initially, M.S. appears to argue that she is entitled to parenting time because she contends that she is S.S.'s legal parent. In support of this argument, M.S. relies on Levin v. Levin, in which our supreme court addressed the issue of whether a husband who consented to the artificial insemination of his wife with donor semen was the legal father of the resulting child. 645 N.E.2d 601, 604-05 (Ind.1994). The court held, in part, that by consenting to the artificial insemination and inducing his wife to go forward with the procedure, the husband had promised to become the father of the resulting child. Id. at 604. He was therefore equitably estopped from denying his support obligations toward the child. Id. at 605.
M.S. failed to raise this argument before the trial court.[3] A party waives appellate review of an issue or argument unless the party raised that issue or argument before the trial court. GKC Ind. Theatres, Inc. v. Elk Retail Investors, LLC., 764 N.E.2d 647, 652 (Ind.Ct.App. 2002). Accordingly, we conclude that M.S. has waived any claim that she is entitled to parenting time because she is S.S.'s legal parent.
Next, M.S. claims that the trial court erred in finding that M.S. must be a de facto custodian in order to be granted parenting time with S.S. The trial court made the following relevant findings:
1. Under the undisputed facts of this case [M.S.] is not a de facto custodian.
* * *
3. Even if [M.S.] were a de facto custodian such a status does not give her any Parenting Time rights.

4. A claim of Parenting Time being "in the best interests of the child" must be *286 supported by a status [M.S.] does not have.
Appellant's App. p. 7 (emphasis added). As an initial matter, we note that M.S. does not challenge the trial court's finding that she was not a de facto custodian of S.S. Rather, she simply argues that the trial court found that she must be a de facto custodian in order to be awarded parenting time, and that such finding was clearly erroneous.
We do not interpret the trial court's February 26, 2010 order as finding that M.S. must be a de facto custodian in order to be awarded parenting time. Rather, the court specifically found that even if M.S. were a de facto custodian, that status would not entitle her to parenting time. Our supreme court has held that the de facto custodian statute bears only on the question of custody, not visitation. K.I. ex rel J.I. v. J.H., 903 N.E.2d 453, 461-462 (Ind.2009). The trial court's conclusion is therefore not clearly erroneous.
The trial court went on to find that "[a] claim of Parenting Time being in the best interests of the child must be supported by a status [M.S.] does not have." Appellant's App. p. 7. Although the trial court did not elaborate on what status would entitle M.S. to parenting time, we note that parenting time has been defined as "the time set aside by a court for a parent and child to spend together." Ind.Code § 31-9-2-88.5 (2008) (emphasis added).
Where the General Assembly has defined a word, this court is bound by that definition. Herron v. State, 729 N.E.2d 1008, 1010 (Ind.Ct.App.2000), trans. denied. We therefore conclude that only parents may be awarded parenting time. As explained above, M.S. has waived any claim that she is S.S.'s legal parent, so she is not entitled to parenting time with S.S. Therefore, the trial court's conclusion that M.S.'s claim to parenting time must be supported by a status she did not possess is not clearly erroneous. See also Ind. Code § 31-17-4-1 (2008) (providing that "[a] parent not granted custody of the child is entitled to reasonable parenting time rights" (emphasis added)); K.I., 903 N.E.2d at 461 (noting that the Indiana Parenting Time Guidelines apply to parents, not other family members).
Nevertheless, Indiana case law permits third-party visitation, as opposed to parenting time, to be awarded to an unrelated adult under certain limited circumstances.[4]See, e.g., Schaffer v. Schaffer, 884 N.E.2d 423, 425 (Ind.Ct.App.2008); Francis v. Francis, 654 N.E.2d 4, 7 (Ind. Ct.App.1995), trans. denied; In re Custody of Banning, 541 N.E.2d 283, 284 (Ind. Ct.App.1989); Collins v. Gilbreath, 403 N.E.2d 921, 923-24 (Ind.Ct.App.1980). Our supreme court has expressed approval of a line of cases limiting standing to seek third-party visitation to former stepparents. Worrell v. Elkhart Cnty. Office of Family & Children, 704 N.E.2d 1027, 1029 (Ind.1998); see also In re Guardianship of J.E.M., 870 N.E.2d 517, 519 (Ind.Ct.App. 2007). Because it is undisputed that M.S. is not S.S.'s former stepparent, these cases would appear to preclude a visitation order in favor of M.S.
However, a more recent decision of our supreme court on which M.S. heavily relies casts doubt on the conclusion that third-party visitation is strictly limited to former stepparents. In King v. S.B., a mother's former same-sex domestic partner filed a lawsuit seeking to be recognized as the child's legal parent or, alternatively, to be awarded continued visitation with the *287 child. 837 N.E.2d 965, 966 (Ind.2005). Our supreme court reversed the trial court's grant of mother's motion to dismiss for failure to state a claim on which relief can be granted, holding that the former domestic partner was not necessarily precluded from being awarded "[a]t least some of the relief sought[.]" Id. at 967.
Assuming without deciding that third-party visitation is not limited to former stepparents based on our supreme court's holding in King, we conclude that M.S. is not entitled to visitation with S.S. M.S. concedes that for a trial court to enter a visitation order in her favor, visitation must be "proven to be in the best interests of the child[.]" Appellant's Br. at 14. See Francis, 654 N.E.2d at 7 ("To establish grounds for visitation, a third party must demonstrate the existence of a custodial and parental relationship and that visitation would be in the children's best interest."). Here, however, the trial court specifically found that continued contact with M.S. was not is S.S.'s best interest. Appellant's App. p. 8. M.S. argues that this finding is unsupported by the record, and therefore clearly erroneous. We disagree.
We first note that we accord deference to the trial court's determination of the best interests of the child. King, 837 N.E.2d at 967. Turning to the case before us, the record establishes that M.S. threw things at C.S. and pushed her to the ground in the presence of the child. Additionally, M.S. threatened C.S.'s life and told S.S. "I'm going to f* * *ing kill your mother, I'm fixing to put a cap in her a* *." Tr. p. 21. M.S.'s actions were so threatening that six-year-old S.S. tried to intervene by holding onto M.S. and telling C.S. to leave. Tr. p. 22. These facts amply support the trial court's finding that continued contact with M.S. was not in S.S.'s best interest. The trial court's finding in this regard was not clearly erroneous.[5]

Conclusion
The trial court properly vacated its September 5, 2007 order because the order was void ab initio. Because the September 5, 2007 order was a legal nullity, there was no existing custody or visitation order for the trial court to modify. Finally, the trial court did not abuse its discretion in denying visitation to M.S.
Affirmed.
BAKER, C.J., and NAJAM, J., concur.
NOTES
[1] Although the "Joint Petition to Determine Custody" is not available in the record before us, both parties agree that the resulting order reflects the agreement of the parties as set out in the petition.
[2] A parent's consent to adoption is not required under certain limited circumstances which are not relevant here, such as abandonment or failure to provide for care or support, or where parental rights have been terminated. See Ind.Code §§ 31-19-9-8, 31-35-6-4(a)(2) (2008).
[3] We note that M.S. has not included her trial brief or C.S.'s response in the record. Our review of the transcript, however, reveals that M.S. never cited Levin during any hearing before the trial court. Moreover, her arguments centered on whether she was entitled to continued contact with S.S. either as a de facto custodian or under our third-party visitation cases, which we discuss further below. See Tr. pp. 158-59.
[4] The Indiana Code establishes a separate statutory scheme for grandparents requesting visitation. See Ind.Code § 31-17-5-1 (2008).
[5] M.S. also briefly argues that she is entitled to joint custody of S.S., citing Indiana Code section 31-17-2-13 (2008), which permits a court to award joint legal custody if doing so would be in the best interest of the child. However, as we noted above, the trial court found that continued contact with M.S. was not in S.S.'s best interest, and this finding was not clearly erroneous. Accordingly, M.S. is not entitled to joint custody of S.S.