## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 21 2020, 9:01 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Katharine Vanost Jones
Evansville, Indiana

ATTORNEY FOR APPELLEE

Patrick A. Duff
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Adoption of M.J.F, A.S.F., J.M.F. II, and A.M.W.F

R.S.F. (Natural Mother),

*Appellant-Respondent,*

v.

B.F. (Adoptive Mother),

*Appellee-Petitioner.*

February 21, 2020

Court of Appeals Case No. 19A-AD-1905

Appeal from the Vanderburgh Superior Court

The Honorable Brett J. Niemeier, Judge

The Honorable Renee Allen Ferguson, Magistrate

Trial Court Cause Nos. 82D04-1807-AD-141, 82D04-1807-AD-142, 82D04-1807-AD-144 & 82D04-1807-AD-145

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Respondent, R.S.F. (Mother), appeals the trial court's Order granting the petition for adoption of her children M.J.F., A.S.F., J.M.F. II, and A.W.M.F (collectively, the Children), by Appellee-Petitioner, B.F. (Stepmother).

We affirm.

# ISSUE

Mother presents this court with one issue, which we restate as: Whether the trial court's Order dispensing with Mother's consent to the adoption of the Children was clearly erroneous.

# FACTS AND PROCEDURAL HISTORY

Mother and J.F. (Father) divorced in 2007. Mother received custody of their two children, M.J.F., born in 2001, and J.M.F. II, born in 2003. Mother and Father eventually reconciled and had two additional children, A.M.W.F., born in 2010, and A.S.F., born in 2011. In 2008, Father was awarded custody of the two older children, and the two younger children have been in his custody since 2012. Mother was ordered by the divorce court to pay $86 per month in child support, which was deducted from her paycheck. Father married Stepmother in 2014. In 2016, the divorce court restricted Mother's parenting time with the Children to two, one-hour supervised parenting time sessions per month at a community facility.

In September 2016, Mother, who has Bipolar Disorder, was awarded Social Security Income (SSI) disability benefits of $750 per month. Mother's court-ordered support obligation for the Children was reduced to nothing after she began receiving this benefit. Mother provided no money or in-kind support to Father and Stepmother for the Children's care after September 2016. Mother worked for five weeks in 2017, the only employment she had after receiving her disability benefits.

On February 27, 2017, Mother was charged with three Counts of invasion of privacy, one of which stemmed from an incident where she was arrested on the lawn of the Children's school. In March 2018, Mother left a rambling, profanity-laced message on Father's voicemail in which she told Father, among many other things, to "[c]ome on down here to the Casino big boy and let's duke it out." (Transcript p. 109). On March 16, 2018, Mother was charged with resisting law enforcement and false informing as a result of going to a fast-food restaurant and untruthfully reporting a disturbance at Stepmother and Father's home so that law enforcement would be summoned. As part of the resolution of those criminal cases, in March 2018, Mother was referred to mental health court. On September 27, 2018, Mother declined further participation in mental health court, citing as her reason that her mother, who lived in Tennessee, was terminally ill which required Mother to travel frequently. Mother also felt that she "spent six months in Mental Health Court

and [she] decided [she] was done." (Tr. p. 77). Mother subsequently pleaded guilty to invasion of privacy, resisting law enforcement, and false reporting.

[7] On July 13, 2018, Stepmother filed petitions to adopt the Children. On August 3, 2018, Mother filed her objection to the adoption petitions. On May 8, 2019, the trial court held a hearing on whether Mother's consent was required for the adoptions. Parenting time records admitted into evidence at the consent hearing showed that Mother routinely provided soft drinks, candy, donuts, and small monetary gifts to the Children during her parenting time sessions until she was told by Father to stop. Mother's gifts of money were never large enough for the Children to buy shoes, clothing, or anything of substance for their care. Mother testified at the consent hearing that Stepmother and Father "supply everything that my children need and I like to supply some things that they want." (Tr. p. 75).

[8] Mother testified about her frequent contact with eldest child M.J.F. outside of supervised parenting time. Mother went to M.J.F.'s place of employment and school to give her money. Mother would also contact M.J.F.'s school and leave a message about a key, which was a pre-arranged signal to M.J.F. that Mother had left something at an agreed-upon location for the child to retrieve. Mother also contacted the Children through a social media platform. Mother maintained that she was under a doctor's care for her mental health issues and had started counseling.

[9]     Stepmother testified regarding her life with the Children. In 2015 and 2016, Stepmother routinely picked up Mother and took her and the Children places so that they could spend time together. This ended when Mother and M.J.F. got into a heated argument at a restaurant which scared the other children and made them all cry. Stepmother attended to the Children's daily needs, helped them with their homework, and took them to appointments. Stepmother had a good relationship with the Children. The two older children executed consents to their adoption by Stepmother.

[10]    The guardian *ad litem* (GAL) appointed in the adoption proceedings had also been the Children's GAL during Mother and Father's divorce and custody case. The GAL reported at the consent hearing that during the divorce proceedings, Mother fled with the Children on two occasions and had told the Children that she would kill Stepmother and Father. This caused the Children to be afraid of Mother. Mother had repeatedly violated the divorce court's orders by contacting the Children outside of court-ordered parenting time. Mother had not cooperated with the GAL's requests to meet with her during the adoption proceedings. The GAL was concerned for Mother's mental health because there was no evidence that Mother had done anything to change her behavior. The GAL opined that Mother was not a fit parent for the Children and that it was in the Children's best interests that the adoption be granted over Mother's objection.

[11]     At the conclusion of the consent hearing, the trial court ruled that Mother's consent was not necessary because she had failed to provide the Children with care and support for at least one year despite her ability to do so. The trial court also found that Mother was unfit and that it was in the Children's best interests to dispense with Mother's consent to the adoption. On July 11, 2019, the trial court held a hearing on Stepmother's adoption petition, which it granted.

[12]     Mother now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

[13]     Mother challenges the evidence supporting the trial court's determination that her consent to the adoptions was not required. Upon reviewing a trial court's ruling in an adoption proceeding, "we presume that the trial court's decision is correct, and the appellant bears the burden of rebutting this presumption." *In re Adoption of J.L.J.*, 4 N.E.3d 1189, 1194 (Ind. Ct. App. 2014), *trans. denied*. We will not disturb an adoption ruling unless the evidence leads to but one conclusion and the trial court reached an opposite conclusion. *Matter of Adoption of C.A.H.*, 136 N.E.3d 1126, 1128 (Ind. 2020). We refrain from reweighing the evidence, instead examining the evidence most favorable to the trial court's ruling, together with the reasonable inferences to be drawn from that evidence, to determine whether sufficient evidence exists to sustain the decision. *In re Adoption of M.L.*, 973 N.E.2d 1216, 1222 (Ind. Ct. App. 2012). "Moreover, we generally give considerable deference to the trial court's

decision in family law matters, as we recognize that the trial court judge is in the best position to judge the facts, determine witness credibility, get a feel for the family dynamics, and get a sense of the parents and their relationship with their children." *Id.*

[14] In addition, where, as here, the trial court enters *sua sponte* findings and conclusions, we exercise a two-tiered standard of review. *See M.S. v. C.S.*, 938 N.E.2d 278, 281 (Ind. Ct. App. 2010). We first determine whether the evidence supports the findings and then we determine whether the findings support the trial court's conclusions. *Id.* We will only set aside a trial court's findings and conclusions if they are clearly erroneous, meaning that they lack any evidence or any reasonable inferences to support them. *Id.* at 281-82. *Sua sponte* findings "control only as to issues upon which the court has found, but they do not otherwise affect our general judgment standard of review, and we may look both to other findings and beyond the findings to the evidence of record to determine if the result is against the facts and circumstances before the court." *Matter of Adoption of E.M.L.*, 103 N.E.3d 1110, 1115 (Ind. Ct. App. 2018), *trans. denied.*

[15] A trial court's grant of an adoption petition over the objection of a natural parent results in the termination of parental rights and implicates the traditional right of parents under the Fourteenth Amendment to the United States Constitution to establish a home and raise their children. *In re Adoption of O.R.*, 16 N.E.3d 965, 972 (Ind. 2014). A parent's interest in the care, custody, and

control of her children is "'perhaps the oldest of the fundamental liberty interests.'" *Id*. (quoting *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000)). "However, even the status of natural parent, though a material consideration, is not one which will void all others, and under carefully enumerated circumstances, the statute allows the trial court to dispense with parental consent and allow adoption of the child." *In re Adoption of N.W.*, 933 N.E.2d 909, 913 (Ind. Ct. App. 2010), *opinion adopted,* 941 N.E.2d 1042 (Ind. 2011).

[16] Indiana Code section 31-19-9-8(a) provides, in relevant part, as follows:

> Consent to adoption, which may be required under section 1 of this chapter, is not required from any of the following:
>
> (2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:
>
>> * * * *
>>
>> (B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.
>>
>> * * * *
>
> (11) A parent if:
>
>> (A) a petitioner for adoption proves by clear and convincing evidence that the parent is unfit to be a parent; and
>>
>> (B) the best interests of the child sought to be adopted would be served if the court dispensed with the parent's consent.

The party seeking to adopt has the burden to prove by clear and convincing evidence that a noncustodial parent's consent is not required. *See In re Adoption of M.A.S.*, 815 N.E.2d 216, 220 (Ind. Ct. App. 2004). Because the adoption consent statute is written in the disjunctive, the existence of any of the circumstances listed provides adequate reason to dispense with the noncustodial parent's consent. *In re Adoption of M.L.*, 973 N.E.2d at 1222.

## I. *Care and Support of the Children*

[17] Mother first challenges the trial court's conclusion that she failed to provide care and support for the Children despite having the ability to do so. Mother does not contend on appeal that the evidence showed that she provided support for the Children. Rather, she argues that Stepmother failed to show by clear and convincing evidence that Mother had the ability to provide support.

[18] In order to prevail under this portion of the statute, the petitioner must show that the parent had the ability to provide support that she failed to provide. *Matter of Adoption of E.M.L.*, 103 N.E.3d at 1116. The ability to pay is not adequately shown by proof of income alone. *Id*. Instead, it is necessary to consider the totality of the circumstances, which could include whether income is steady or sporadic and what the noncustodial parent's necessary and reasonable expenses were. *Id*. "A parent's failure to support may have occurred during any year in which the parent had an obligation and the ability

to provide support, but failed to do so." *In re Adoption of J.L.J.*, 4 N.E.3d at 1194 (quotation omitted).

[19]     In support of its conclusion that Mother had the ability to provide care and support, the trial court found that Mother began receiving disability income in 2016, federal law prohibits such income from being paid as child support, but that Mother had worked in 2017. It also found that Mother spent money on snack food and gifts for the Children and gave them money directly, all of which could have been provided to Father to support the Children. Although recognizing Mother's limited means, the trial court found that "[a]ny amount of money that would have been given to [F]ather for support would have been an acknowledgement by [M]other that she is aware that the [C]hildren need to be financially supported." (Appellant's App. Vol. II, p. 3).

[20]     The gravamen of Mother's argument is that because her income came from SSI disability benefits, the trial court was precluded from finding that she was able to provide the Children with care and support. Stepmother offers no response to this argument. In *Winters v. Talley*, 784 N.E.2d 1045 (Ind. Ct. App. 2003), this court addressed the issue of whether a mother whose only source of income was from SSI could be found to have the ability to provide care and support for her child for purposes of the consent to adopt statute. Examining the treatment of SSI income for child support purposes, the court found that

> SSI is a federal social welfare program designed to assure that the recipient's income is maintained at a level viewed by Congress as

the minimum necessary for the subsistence of that individual."
*Cox v. Cox*, 654 N.E.2d 275, 277 (Ind. Ct. App. 1995). Means-
tested public assistance programs such as SSI are specifically
excluded from a parent's income for the purpose of computing
child support under Ind. Child Support Guideline 3 (A)(1). *Id.*
Child support may not be set such as the obligor is denied a
means of self-support at a subsistence level. *Id.*; Ind. Child Supp.
G. 2, cmt. ("Minimum Support"). As a matter of law, SSI
recipients lack the money or means to satisfy child support
obligations. *See Cox*, 654 N.E.2d at 277 (imputing potential
income to SSI recipient father despite his SSI status "effectively
constitutes an impermissible collateral attack upon the
determination of [f]ather's entitlement to SSI benefits.").

*Winters*, 784 N.E.2d at 1947-48. The court held that "[f]or purposes of
determining that a parent's consent to adoption is not required, we find that a
parent whose only source of income is SSI is not able to provide for the support
of the child." *Id.* at 1048. Our supreme court originally granted transfer of
*Winters*, vacating the decision of this court, but it subsequently dismissed its
grant of transfer. We find the reasoning of *Winters* to be persuasive.

[21] Here, Mother's only reported source of regular income was from SSI.
Following *Winters*, we conclude that the trial court erred when it determined
that Mother had the ability to provide care and support. While it is true that
Mother worked for five weeks at some unspecified time in 2017, the trial court
did not state in either its oral or written rulings what one-year period it found
that Mother had failed to provide care and support, so it is unclear whether
Mother's one-time employment in 2017 had any relevance. In any event, one

period of five weeks of employment is sporadic employment, at most. *See Matter of Adoption of E.M.L.*, 103 N.E.3d at 1116 (holding that we may consider whether any reported employment is steady or sporadic). The only evidence of Mother's necessary and reasonable expenses was that she paid $55 each time she exercised her right to parenting time.

[22] In addition, Mother's small gifts to the Children are the type of token contributions which we have long held to be insufficient to demonstrate that a parent has provided support. *See*, *e.g.*, *Irvin v. Hood*, 712 N.E.2d 1012, 1013 (Ind. Ct. App. 1999) (holding that father failed to provide care and support where he merely provided six items of clothing and some food during visitation over three years); *In re Adoption of M.A.S.,* 815 N.E.2d at 220 n.1 (concluding that Father's occasional provision of groceries, diapers, formula, clothing, presents and cash were inadequate to show care and support). If such token contributions are insufficient to show provision of care and support, they cannot be relied upon exclusively and conclusively as evidence of a parent's ability to provide care and support. This was not a case where Mother was shown to have expended money on other non-essential expenses for herself, despite claiming that her only source of income was SSI. *Cf. In re Adoption of J.L.J.*, 4 N.E.3d at 1194-95 (considering evidence that the father, whose only claimed source of income was SSI, could maintain his own residence, had funds to purchase cigarettes, and could travel between Michigan and Indiana as evidence that he had ability to provide support). We conclude that the trial

court's determination that Mother had the ability to provide care and support to the Children was not supported by the evidence and was, therefore, clearly erroneous. *See M.S.*, 938 N.E.2d at 281-82.

## II. *Unfitness to Parent and Children's Best Interests*

Mother also challenges the evidence supporting the trial court's second basis for dispensing with her consent, namely its determination that she was unfit to parent the Children and that it was in the Children's best interests to grant the adoption without her consent. We address each of these conclusions in turn.

### A. *Unfitness*

Although the term "unfit" is not defined by the adoption statute, we have looked to termination of parental rights cases for guidance as to its meaning. *In re Adoption of M.L.*, 973 N.E.2d at 1223. Those cases have led us to conclude that "factors such as a parent's substance abuse, mental health, willingness to follow recommended treatment, lack of insight, instability in housing and employment, and ability to care for a child's special needs" are all relevant to our inquiry. *Id*.

The trial court found that Mother was unfit to parent the Children because she had untreated mental health issues, those mental health issues had caused her to engage in behavior that resulted in her harassing the family and, ultimately, her conviction for invasion of privacy, and that she had demonstrated poor

impulse control and decision making, unconscionable, selfish behavior, and a lack of insight by encouraging M.J.F. to also violate court orders. Mother does not contend that these factors, in the abstract and taken together, could never support a determination that a parent was unfit; rather, she argues that those factors do not amount to unfitness as they apply to her.

Mother challenges several of the trial court's factual findings regarding her mental health, and therefore, we will examine the record to determine if there is any evidence to support them. *See M.S.*, 938 N.E.2d at 281-82. Mother first challenges the trial court's findings that she failed to follow through with all available treatment because she had voluntarily removed herself from mental health court and that there was no verification of Mother's claims that she was currently in counseling. Mother contends that the trial court impermissibly shifted the burden of proof to her, it was "uncontradicted" that Mother was in counseling and being treated by a physician, and her participation in mental health court was voluntary. (Appellant's Br. p. 19).

We observe that the trial court was in the best position to judge Mother's credibility. *In re Adoption of M.L.*, 973 N.E.2d at 1222. The trial court apparently did not believe Mother's claims that she was currently in treatment and noted as part of that credibility assessment the lack of other evidentiary support for these claims in the record, which did not constitute an unfair shifting of the evidentiary burden to her. In addition, Mother does not dispute that she withdrew herself from mental health court. It was within the trial

court's discretion to conclude that Mother's withdrawal because she "spent six months in Mental Health Court and [she] decided [she] was done" was simply an excuse and was a failure to pursue treatment that was open to her. (Tr. p. 77).

[28] Regarding her mental health as it related to her record of harassment and conviction for invasion of privacy, Mother concedes that the evidence showed that she "was convicted of [i]nvasion of [p]rivacy as a result of charges stemming from an inappropriate phone call to Father, a call to [a fast-food restaurant], and an appearance at the [C]hildren's school to see if they were present for ISTEP testing." (Appellant's Br. p. 20) (record citations removed). Mother argues that the trial court's determination was unsupported because her harassment was not violent, there was no evidence that the Children were present when she did these things, she engaged in no other similar conduct after Stepmother procured a protective order, and these incidents were too remote in time from the consent hearing to be significant. These arguments are unpersuasive because they essentially require us to reweigh the evidence and consider evidence that does not support the trial court's determination in contravention to our standard of review. *See In re Adoption of M.L.*, 973 N.E.2d at 1222.

[29] Lastly, Mother challenges the trial court's determination that she was unfit due to her admitted pattern of seeing M.J.F. outside of court-ordered supervised parenting time. Mother argues that the trial court's findings that she

communicated in code with M.J.F. and taught M.J.F. to "sneak, be dishonest, and that rules do not apply if you do not like them" are not supported by the evidence. (Appellant's App. Vol. II, p. 4). Mother's arguments are not well-taken. Mother testified at the consent hearing that when she had gifts for the Children, she would "call up to school and tell [M.J.F.] that I left the keys under the car for her to get into the house and that was our code that I dropped their stuff off." (Tr. p. 91). This evidence supported the trial court's finding that Mother communicated with M.J.F. in code. Evidence that Mother met with M.J.F. surreptitiously at the child's work, in the bathroom at a restaurant, and communicated with her in code, all in violation of the divorce court's parenting-time order, and all because she was concerned that if Father and Stepmother found out M.J.F. "would get in trouble," supported the other disputed factual finding. (Tr. p. 81).

[30] Mother admits that she met with M.J.F. outside of the parenting time order. However, Mother argues that her knowing violation of the parenting time order had no detrimental effect on M.J.F because M.J.F. was not harmed, parenting time records indicated that she was always appropriate with the Children, and the parenting time records showed that she posed no immediate threat to the Children. These arguments are additional requests for us to reweigh the evidence and to consider evidence that does not support the trial court's determination, something we will not do in light of our standard of review. *See In re Adoption of M.L.*, 973 N.E.2d at 1222. In addition, Mother's assertion that

she had not spoken to, or made contact with, any of her other children outside of parenting time is belied by her testimony at the consent hearing that she communicates with the Children on a social media platform. In short, Mother does not persuade us that the trial court's findings and conclusions regarding her unfitness were clearly erroneous.

## B. *Best Interests*

Mother also briefly contends that the trial court's "best interests" determination was unsupported by the evidence, but Mother does not develop any separate argument on the issue. We conclude that Mother has waived this issue by failing to develop a cogent argument. *See* Ind. Appellate Rule 46(A)(8); *see also Martin v. Brown*, 129 N.E.3d 283, 285 (Ind. Ct. App. 2019) (holding that failure to present a cogent argument results in waiver of the issue on appeal).

Mother's waiver of the issue notwithstanding, we conclude that the trial court's determination regarding the Children's best interests was supported by the evidence. "The primary concern in every adoption proceeding is the best interests of the child." *In re Adoption of M.L.*, 973 N.E.2d at 1224. This court has observed that

> [t]he adoption statute does not provide guidance for which factors to consider when determining the best interests of a child in an adoption proceeding, but we have noted that there are strong similarities between the adoption statute and the termination of parental rights statute in this respect. In termination cases, we have held that the trial court is required to

> look to the totality of the evidence to determine the best interests of a child. Relevant factors include, among others, a parent's historical and current inability to provide a suitable environment for the child, the recommendations of the child's case worker or guardian ad litem, and the child's need for permanence and stability.

*In re Adoption of M.S.*, 10 N.E.3d 1272, 1281-82 (Ind. Ct. App. 2014) (citations omitted).

[33]    Stepmother has shared in the care of the Children for several years. She is with the Children on a daily basis, helps them with their homework, and takes them to their appointments. Stepmother is well-bonded with the Children, and they appear to have thrived in her care. Stepmother demonstrated love for the Children and excellent parenting when she facilitated parenting time between Mother and the Children until that became untenable. The two older children executed consents to their adoption. The Children's GAL testified at the consent hearing that she believed that it was in the Children's best interests to dispense with Mother's consent to the adoption because it did not appear to the GAL that Mother had done anything to address her mental health or change her behavior. This evidence supported the trial court's determination, and therefore, we cannot conclude that determination was clearly erroneous. *See M.S.*, 938 N.E.2d at 281-82.

# CONCLUSION

[34] Based on the foregoing, we conclude that the trial court's determination that Mother's consent for adoption was not required was supported by the evidence and was, therefore, not clearly erroneous.

[35] Affirmed.

[36] Baker, J. and Brown, J. concur