## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 27 2015, 9:27 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Amy K. Noe
Richmond, Indiana

ATTORNEY FOR APPELLEE

Andrew J. Sickmann
Boston Bever Klinge Cross & Chidester
Richmond, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re The Support of
J.B.W. and M.A.W.

A.A.W.,

*Appellant-Father,*

v.

A.D.P.,

*Appellee-Mother*

February 27, 2015

Court of Appeals Case No.
89A01-1409-JP-403

Appeal from the Wayne Circuit Court

The Honorable David A. Kolger, Judge

Cause No. 89C01-0410-JP-063

**Mathias, Judge.**

[1] A.A.W. ("Father") appeals the Wayne Circuit Court's order granting A.D.P. ("Mother") permission to relocate the parties' two minor children, J.B.W. and M.A.W., to New York. Father argues that the trial court clearly erred when it

found that Father did not meet his burden of proving that the relocation was not in the best interests of the children.

[2] We affirm.

## Facts and Procedural History

[3] This is the second appeal addressing Mother's notice of intent to relocate J.W. from Richmond, Indiana to Levittown, New York.[1] Relevant facts recited in the prior appeal are as follows:

> J.W. was born to Mother on September 21, 2004. On June 10, 2005, the trial court entered an order establishing Father's paternity. The trial court awarded Mother custody of J.W., and Father was granted parenting time and ordered to pay child support. Mother, J.W., and Father all resided in Richmond, Indiana. In January 2007, Mother filed a notice of intent to relocate from Richmond to Florida. Father consented to the relocation and, following a hearing, the trial court entered an order granting Mother's request to relocate. Apparently, however, Mother decided not [to] move to Florida and remained in Indiana.

> In 2008, Father was twice found in contempt of court for failure to pay child support. Thereafter, in September 2009, Mother filed a notice of intent to relocate to Indianapolis. Mother failed to properly serve Father with notice as required. Mother filed another notice of intent to relocate to Indianapolis in February 2010, but again failed to properly serve Father with notice as required. During this time, Father was twice found in contempt of court for failure to pay child support.

> Despite her failure to properly serve Father with notice of her intent to relocate to Indianapolis, Mother did move with J.W. to Indianapolis in 2010 and attended the International Business College Dental

---

[1] Father's paternity to M.W., who was born on August 27, 2012, was established in a separate paternity proceedings under cause number 89C01-1309-JP-131. Mother later filed a separate notice of intent to relocate M.W.

Assistant Program. In response to her move, Father filed a petition for contempt against Mother. Mother was found in contempt and ordered to comply with the Indiana Parenting Time Guidelines as they pertained to transportation of J.W. for parenting time access purposes. Following a review hearing, the trial court determined that Mother had complied with the court's compliance order and dismissed the contempt citation. Soon thereafter, Father received his fifth and sixth contempt citations for failure to pay child support. In 2011, Mother returned to Richmond with J.W. after completing her degree.

On June 14, 2013, Mother filed a notice of intent to relocate to New York and properly served Father with such notice. In the notice, Mother stated that she had been offered gainful employment as a dental assistant in the New York area, that the wages for such employment far exceeded her current wages, that she has multiple family members in and near the community where she intends to move, and that she had verified the elementary school that J.W. would attend. Although Father did not file an objection to Mother's proposed relocation, the trial court set the matter for an evidentiary hearing. Mother appeared with counsel, and Father appeared pro se. After the hearing, the trial court entered its order denying Mother's petition to relocate. Specifically, the trial court concluded that Mother did not meet her burden to prove that her relocation request was made in good faith and for a legitimate purpose. The trial court did not make a determination regarding whether the proposed relocation was in J.W.'s best interest.

*In re Paternity of J.W.*, 13 N.E.3d 551, Slip op. at 1-2 (Ind. Ct. App. May 20, 2014).

[4] On appeal, our court concluded that "the familial and financial reasons cited by Mother and supported by the evidence are more than sufficient to satisfy her burden to prove that her relocation request was made in good faith and for a legitimate reason, and the trial court's conclusion to the contrary is clearly erroneous." Slip op. at 5. We observed that because Mother met her burden of proof under the relocation, the burden shifted to Father to prove that the

proposed relocation was not in J.W.'s best interest. However, the trial court "heard very little evidence and made no conclusion regarding J.W.'s best interest"; therefore, we remanded the case to the trial court for further proceedings. Slip op. at 6.

[5] Thereafter, the trial court held a hearing on August 6, 2014. A week prior to the August 6 hearing, the trial court consolidated Mother's notice of intent to relocate J.W. with her notice of intent to relocate M.W.

[6] On September 9, 2014, the trial court issued an order granting Mother permission to relocate J.W. and M.W. to New York, and entered the following findings of fact:

> 18. Mother presented evidence that showed that a job offer remained valid in New York, which would allow her to work as a dental assistant.
>
> 19. Mother is currently employed by a restaurant in Richmond, Indiana, and earns far less than minimum-wage but does receive tip monies that vary on a weekly basis.
>
> 20. Even when considering Mother's wages from tips, Mother will often barely earn a living wage when considering her obligation to support her two children.
>
> 21. Mother has searched for jobs in the Wayne County, Indiana, area that would increase her standard of living; however, has been unsuccessful in obtaining such employment. Indeed, Mother testified that she has submitted multiple applications to dental offices in the Wayne County, Indiana area and that were such employment available, she would accept the same.
>
> 22. Mother testified that she lives at or below poverty level in Richmond, Indiana, and would very much like to change those circumstances for her children. As a result of the evidence presented at the Re-Hearing, this Court agrees with such an assessment when

considering Mother's earning power in Richmond, Indiana, and the financial obligations she is tasked with in raising her two (2) children.

23. This Court would note that since the beginning of this Cause that Father has been held in contempt for failure to pay child support on at least six (6) separate occasions. It is significant that Father rarely satisfies his child support obligation on a consistent basis, which, in turn, creates an even greater financial burden for Mother in raising her two (2) children.

24. Mother testified that if she were permitted to move her two (2) children to New York that Father's access to the children would not be significantly altered. Mother indicated that Father's parenting time with the children is sparse and intermittent. In fact, Mother submitted text messages from Father that show his unwillingness to provide assistance in providing care, financial or otherwise, for the parties' minor children.

25. Father has repeatedly refused to assist Mother in watching the children when Mother is required to work, or to provide assistance in ascertaining a third (3rd) party to watch the children. Mother has shown this Court that Father often rejects his regularly scheduled access to the children and refuses to cooperate with Mother in finding suitable childcare in such instances. This requires Mother to repeatedly find childcare which she is nearly unable to afford when considering her present income.

26. Mother testified extensively to the fact that she has family in New York that is ready and willing to provide the assistance that she does not receive in Richmond, Indiana. Further, Mother has shown this Court that the increase in her wages that she would experience in New York would permit her to provide an all-around better life for her children and hopefully lift them from poverty.

27. Mother plans to live with her sister and brother-on-law in New York without being obligated to pay rent so that she may save money and eventually begin a solid financial life for her and her children. The evidence and testimony presented at the Re-Hearing show this Court that this goal is not presently possible for Mother should she remain in Richmond, Indiana.

28. Father and his Mother, the children's Grandmother, testified that each spends copious time with the children herein and that the children are bonded with Father. Father submits that it would not be

in the best interest of the children to move to New York because Mother could increase her wages in the Wayne County, Indiana, area and that the children have family in Richmond, Indiana. This, however, must be tempered against the fact that Mother has attempted to gain better employment in the Wayne County, Indiana, area and that the children also have family in New York.

29. This Court has previously found that Father is bonded with the children and that his access with them is meaningful. The Court does not doubt that this remains true; however, Mother has since shown the Court that Father often chooses not to capitalize on these bonds and spend time with the children.

30. This Court acknowledges that Father's parenting time with the children will be effected should Mother move to New York; however, Father has failed to show this Court that his access to the children has been consistent over a significant period of time. Indeed, the evidence shows that Father often appears to argue with Mother for less time with the children.

31. The distance between Indiana and New York is substantial; however, Mother's proposal regarding Father's access to the children is reasonable, if not liberal. Father testified that should Mother be permitted to move the parties' children to New York that he would meet Mother half-way between Indiana and New York to exercise access with the children, which would require approximately five and one-half (5 1/2) hours of Father's time to pick up the children. Mother and Father further agreed that Father should have regular contact with the children via Skype or some other medium by which Father could communicate with the children via video.

32. Father's current parenting time access equates to Father spending fifty-two (52) overnights with the children per year. Should Mother be permitted to move the children to New York, Father's access pursuant to the Indiana Parenting Time Guidelines When Distance Is A Major Factor should provide Father with greater access; although this Court recognizes that such access would not be as consistent were the children to remain in Richmond, Indiana. Still, however, Mother has shown this Court that Father's access to the children when they live in Richmond, Indiana cannot be described as consistent when considering Father's propensity to cancel his regularly scheduled parenting time.

33. Father lives with his Mother in her home. This home does not have sufficient bedrooms for the children to live in on a full-time basis. Further, Mother has been the primary caregiver of the children for their entire lives. As a result, Mother will continue to be responsible for the care and custody of the minor children and she should be permitted to increase her standard of living to that of at least a basic level, which will better the lives of the parties' children.

34. Should Mother remain in Richmond, Indiana, with the children it is likely that Mother and the parties' children will continue to live in poverty; and it is clear to the Court that Father does little to change those circumstances through the satisfaction of his child support obligation or otherwise.

35. Mother should be permitted to lift herself and her children from her current circumstances by accepting employment in New York which will nearly triple her wages. Further Mother will receive the support from family in New York that she needs to build a better financial future for her children. It is clear to this Court that by moving the children to New York, the children's lives will be greatly improved.

Appellant's App. pp. 54-57. The court concluded that Father failed to meet his burden to show that the move was not in J.W.'s and M.W.'s best interests. Father now appeals. Additional facts will be provided as necessary.

# Standard of Review

At Father's request, the trial court issued findings fact and conclusions thereon pursuant to Indiana Trial Rule 52. We therefore employ a two-tiered standard of review:

> [W]e must first determine whether the record supports the factual findings, and then whether the findings support the judgment. On appeal, we will not set aside the findings or judgment unless they are clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses. We therefore consider only the evidence favorable to the judgment and the

reasonable inferences flowing therefrom, and we will neither reweigh the evidence nor assess witness credibility. A judgment is clearly erroneous when there is no evidence to support the findings, the findings do not support the judgment, or the trial court applies the wrong legal standard to properly found facts.

*T.L. v. J.L.*, 950 N.E.2d 779, 783 (Ind. Ct. App. 2011) (quoting *M.S. v. C.S.*, 938 N.E.2d 278, 281–82 (Ind. Ct. App. 2010)).

[9] Moreover, our supreme court has expressed a 'preference for granting latitude and deference to our trial judges in family law matters." *In re Marriage of Richardson*, 622 N.E.2d 178, 178 (Ind. 1993)). We afford such deference because the trial judge has "unique, direct interactions with the parties face-to-face." *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011). "Thus enabled to assess credibility and character through both factual testimony and intuitive discernment, our trial judges are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children." *Id*. Therefore, we "will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment. The concern for finality in custody matters reinforces this doctrine." *Baxendale v. Raich*, 878 N.E.2d 1252, 1257-58 (Ind. 2008).

[10] Mother filed her notice of intent to relocate pursuant to Indiana Code section 31-17-2.2-1(a), which provides that "[a] relocating individual must file a notice of the intent to move with the clerk of the court that: (1) issued the custody order or parenting time order; or (2) . . . has jurisdiction over the legal proceedings concerning the custody of or parenting time with a child; and send

a copy of the notice to any nonrelocating individual." "The relocating individual has the burden of proof that the proposed relocation is made in good faith and for a legitimate reason." I.C. § 31-17-2.2-5(c). If the relocating parent meets that burden, "the burden shifts to the nonrelocating parent to show that the proposed relocation is not in the best interest of the child." I.C. § 31-17-2.2-5(d). *See also T.L.*, 950 N.E.2d at 784.

[11] In determining whether to permit a relocation, the trial court shall take into account the following:

> (1) The distance involved in the proposed change of residence.
>
> (2) The hardship and expense involved for the nonrelocating individual to exercise parenting time[.]
>
> (3) The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time . . . including consideration of the financial circumstances of the parties.
>
> (4) Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child.
>
> (5) The reasons provided by the:
>
> > (A) relocating individual for seeking relocation; and
> >
> > (B) nonrelocating parent for opposing the relocation of the child.
>
> (6) Other factors affecting the best interest of the child.

I.C. § 31-17-2.2-1(b). "The 'other factors affecting the best interest of the child' include, by implication, the factors set forth for custody determinations and modifications under Indiana Code section 31-17-2-8." *T.L.*, 950 N.E.2d at 785 (citing *Baxendale*, 878 N.E.2d at 1257).

[12] Father argues that he proved that allowing J.W. and M.W. to relocate to New York was not in the children's best interests. Father cites to his own testimony and his mother's to argue that he has been exercising regular parenting time with the children and that his relationship with the children will suffer if they relocate to New York. However, the trial court weighed this testimony against Mother's testimony that Father has historically failed to exercise regular parenting time with the children. Mother also stated that Father only exercises regular parenting time with the children when the parties have scheduled court dates. Tr. p. 78. Father's argument is simply a request to reweigh the evidence and the credibility of the witnesses, which we will not do. *See T.L.*, 950 N.E.2d at 783.

[13] Father also argues that the trial court's finding that Mother's wages and standard of living will increase beyond the poverty level if she moves to New York is not supported by the evidence. Mother testified that she will be living with her sister in New York and earning a wage of twenty-two dollars per hour working approximately forty hours per week. She and the children will reside with her sister rent-free, and family members are willing to provide child care at no cost. Mother's current wages are less than half of that amount, her rent is $100 per week, and she pays for childcare.

[14] Mother stated that she desires to save money to eventually obtain her own residence. Father correctly observes that when she does so, her disposable income will decrease. However, Mother's speculative future plans do not negate

the trial court's finding that Mother's present ability to support herself and her children with increase substantially if they move to New York.

[15] Next, Father argues that the substantial distance between Richmond and Levittown, New York combined with his lack of financial resources will impair his ability to maintain his relationship with J.W. and M.W. However, we conclude that the following finding is supported by the evidence:

> Father's current parenting time access equates to Father spending fifty-two (52) overnights with the children per year. Should Mother be permitted to move the children to New York, Father's access pursuant to the Indiana Parenting Time Guidelines When Distance Is A Major Factor should provide Father with greater access; although this Court recognizes that such access would not be as consistent were the children to remain in Richmond, Indiana. Still, however, Mother has shown this Court that Father's access to the children when they live in Richmond, Indiana cannot be described as consistent when considering Father's propensity to cancel his regularly scheduled parenting time.

Appellant's App. p. 52. Father also stated that if Mother was allowed to relocate the children, he would purchase a computer so that he could Skype with them.

[16] Father will incur expenses to facilitate his parenting time with his children, and he did prove that he has limited financial resources. However, Mother's financial resources will remain limited if she continues to reside in Indiana.

Also, Father's historical failure to consistently pay his child support has contributed to Mother's own financial hardship.[2]

[17] Mother desires to relocate to New York to provide a better life for herself and the children. In addition to a better job with a substantial increase in pay, she will have the assistance of family members that she does not have in Richmond, Indiana.[3] The evidence established that Mother has requested assistance from Father that he is not willing to give. Although the distance between Richmond and Levittown is significant, and Father will experience hardship in facilitating his parenting time, the trial court's finding that Father failed to prove that the proposed relocation is not in the best interest of the children is supported by the evidence. For all these reasons, we affirm the trial court's order granting Mother's permission to relocate the children to New York.

[18] Affirmed.

Najam, J.. and Bradford, J., concur.

---

[2] Father's child support obligation is $45 per week. The last contempt hearing for Father's failure to pay child support was in September 2011 and his arrearage was $6102.72. Father is still paying on the arrearage.

[3] Mother's family members who live in Indiana are unable or unwilling to help her care for the children.