## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 19 2019, 10:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Marianne Woolbert
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

David E. Corey
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Involuntary Termination of the Parent-Child Relationship of B.J. (Minor Child)<br><br>        and<br><br>J.R. (Father),<br>*Appellant-Respondent,*<br><br>        v.<br><br>The Indiana Department of Child Services,<br>*Appellee-Petitioner.* | August 19, 2019<br><br>Court of Appeals Case No.<br>19A-JT-599<br><br>Appeal from the Madison Circuit Court<br><br>The Honorable G. George Pancol, Judge<br><br>Trial Court Cause No.<br>48C02-1808-JT-149 |

**Bailey, Judge.**

# Case Summary

J.R. ("Father") appeals the termination of his parental rights to B.J. ("Child") upon the petition of the Madison County Department of Child Services ("DCS"). We affirm.

# Issues

Father presents two issues for review:

I. Whether DCS was collaterally estopped from pursuing a second petition for involuntary termination where no final judgment was entered on a previously-filed petition; and

II. Whether DCS established, by clear and convincing evidence, the requisite statutory elements to support the termination decision.

# Facts and Procedural History

Child was born on July 13, 2011, to Father and N.J. ("Mother").[1] In early 2016, Child was living with Mother when DCS began investigating a report that Child's half-brother suffered physical injuries while in Mother's home. During the investigation, DCS learned that Child had also sustained unexplained bruises to his legs and face and insect bites to his back while in Mother's care. Child was removed from Mother's home and placed with Father. On January

---

[1] Mother's parental rights to Child were also terminated. She is not an active party to this appeal.

26, 2016, DCS filed a verified petition alleging Child was a Child in Need of Services ("CHINS"). On March 3, 2016, Father appeared with counsel at a pre-trial conference, withdrew his previous denial, and waived his right to a contested fact-finding hearing. Child was adjudicated a CHINS.

[4] On March 24, 2016, DCS filed a request to remove Child from Father's home and place him in foster care because Father tested positive for THC on four occasions. The court denied DCS's request, but as a condition of Child's continued placement with Father, ordered Father to make contact with Aspire (a service provider), enter into a safety plan, complete a substance abuse evaluation, take random drug screens, and stop smoking marijuana. On May 5, 2016, DCS removed Child from Father's home due to his non-compliance with the court's orders and a new report of physical abuse of Child by Father.

[5] On November 15, 2016, the court entered a dispositional order, ordering Father to, among other conditions, maintain contact and keep appointments with DCS, the Court Appointed Special Advocate ("CASA"), and service providers; avoid illegal drug use; obey the law; participate in home-based counseling; successfully complete a substance abuse assessment and treatment; submit to random drug screens; not engage in domestic violence; attend all scheduled visitations; and participate in and complete anger management, batterer's intervention, and parenting programs. The court also ordered DCS to look into other potential placements for Child, who at the time was placed in a therapeutic foster home Elkhart County.

[6]     Following a periodic case review hearing held May 16, 2017, the trial court found that Father had failed to complete any services despite numerous referrals, was non-cooperative with DCS, and had not visited with Child since January 2017. Although DCS had provided Father with transportation services to visit Child, the service ceased after Father missed visits and was arrested on a warrant for failure to pay child support for another child.

[7]     As of April 16, 2018, Father had completed home-based case work, a substance use assessment, and some drug screens through a different CHINS case involving another of Father's children. However, Father had not visited with Child and visitation had been suspended due to inactivity.

[8]     On October 30, 2018, DCS filed a verified petition to involuntarily terminate Father's parental rights. The trial court held a fact-finding hearing on the petition on January 29, 2019. At the hearing, DCS also introduced documentary evidence of three of Father's criminal cases that began while the CHINS case was active. In 2017, Father was charged with and subsequently pleaded guilty to maintaining a common nuisance and possession of marijuana. He was sentenced to two years, all suspended to probation, and ordered to complete substance abuse treatment through Aspire. In 2018, Father admitted to two probation violations: the first for taking substantial steps towards the commission of invasion of privacy and the second for committing domestic battery. For the latter, Father was placed on work release. However, in late December 2018, the Madison County Work Release Center filed a petition to terminate Father's work release after he was granted leave to seek medical

treatment and failed to return. While on medical leave, Father also used methamphetamine. As a result, Father was charged with and pleaded guilty to failure to return to lawful detention and possession of methamphetamine.

[9] On February 5, 2019, the trial court entered its order terminating Father's parental rights. In pertinent part, the trial court found:

> a. Mother and Father have failed to adequately participate in reunification services designed to overcome their chronic instability, substance abuse, and related criminal conduct. Mother and Father have been offered multiple opportunities to address their ongoing substance abuse problems, including multiple assessments, monitoring drug screens, and multiple referrals for substance abuse treatment. Mother and Father have disregarded these opportunities by continuing to abuse drugs and pursue criminal conduct that has led to extended incarceration for Father, as well as multiple pending sentencing hearings for his most recent criminal convictions. While Mother has simply disappeared from participation in any services, including failing to appear for the trial on the termination petition, Father's appearance at the termination trial was made possible by his incarcerated status. Father's recent bouts of fugitive status accurately demonstrate his pattern of failing to follow through on his responsibilities to Child.
>
> [. . . .]
>
> c. Father's incarceration since 12/28/2018, likely to be extended at his combined sentencing hearings on 2/6/2019, similarly demonstrates a fundamental irresponsibility in the conduct of his affairs and an absence of adequate judgment which prevents him from being able to continue as a parent to Child. He cannot provide any of the basic necessities Child requires while pursuing either illegal drugs, criminal activity, or both.

c[sic]. Father's substance abuse has not abated. He has continued to use and abuse illegal drugs throughout the proceedings, and was found in possession of methamphetamine as recently as 12/2/2018.

[. . . .]

30.) The previous recitation of found facts and reasonable inferences, both in specific and minute detail and by general category, lead directly to the factual finding, now made, that there is a reasonable probability that the continuation of the parent-child relationship between the Mother and Father with Child poses a threat to the well-being of Child, and also that there is a reasonable probability that the conditions that resulted in the child's removal from and continued placement outside the care and custody of Mother and Father will not be remedied.

[. . . .]

32.) The CASA and long-term Family Case Manager have testified that termination of the parent-child relationship and adoption of the child are in the child's best interests. The Court agrees with these opinions, and now accepts and adopts them as its own finding of fact in these proceedings, supported additionally by the unremedied parenting deficiencies found above.

33.) Adoption is a satisfactory permanency plan for Child based on the care and increased stability he has achieved outside of the care of Mother and Father, and on the long-term pattern of both Mother and Father to be unable to fulfill their responsibilities to Child.

(App. Vol. II 13-14.) Father now appeals.

# Discussion and Decision

## Collateral Estoppel

[10] We turn first to Father's contention that DCS was collaterally estopped from proceeding on the termination petition filed on October 30, 2018 because there was a termination petition previously filed on September 18, 2017 involving the same parties and allegations.[2] Father argues that "DCS should not be allowed to have two bites at the same apple." (Appellant's Br. 15.)

[11] The doctrine of collateral estoppel bars relitigation of an issue that was necessarily adjudicated in a former suit. *McKinney v. Greene Cty. Office of Family & Children (In re C.M.)*, 675 N.E.2d 1134, 1137 (Ind. Ct. App. 1997). In determining whether to apply collateral estoppel, we examine whether the party seeking estoppel has established the following elements: (1) a final judgment in a former suit on the merits in a court of competent jurisdiction; (2) an identity of issues; and (3) the party to be estopped was a party in the prior action or in privity with that party. *Id*. (citing *Bojrab v. John Carr Agency*, 597 N.E.2d 376, 379 (Ind. Ct. App. 1992)).

[12] Father's argument was not raised in the trial court and thus is waived. *M.S. v. C.S.*, 938 N.E.2d 278, 285 (Ind. Ct. App. 2010) ("A party waives appellate review of an issue or argument unless the party raised that issue or argument

---

[2] A copy of the September 18, 2017 petition is not included in the record on appeal.

before the trial court."). Nevertheless, as Father readily acknowledges in his brief, no final judgment was entered on the 2017 petition. Accordingly, the traditional element of finality of judgment has not been met, and collateral estoppel does not bar DCS from pursuing the 2018 petition to terminate.

# Termination of Parental Rights

## *Standard of Review – Sufficiency of the Evidence*

[13] Our standard of review is highly deferential in cases concerning the termination of parental rights. *In re K.S.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). When we review whether the termination of parental rights is appropriate, we will not reweigh the evidence or judge witness credibility. *In re V.A.*, 51 N.E.3d 1140, 1143 (Ind. 2016). We will consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* In so doing, we give "due regard" to the trial court's unique opportunity to judge the credibility of the witnesses. *In re I.A.*, 934 N.E.2d 1127, 1132 (Ind. 2010) (citing Indiana Trial Rule 52(A)). We will set aside the trial court's judgment only if it is clearly erroneous. *In re K.T.K.*, 989 N.E.2d 1225, 1229 (Ind. 2013). To determine whether a judgment terminating parental rights is clearly erroneous, we review the trial court's judgment to determine whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment. *I.A.*, 934 N.E.2d at 1132.

*Requirements for Involuntary Termination of Parental Rights*

[14] "The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children." *In re Adoption of O.R.*, 16 N.E.3d 965, 972 (Ind. 2014). Although parental rights are of a constitutional dimension, the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental responsibilities. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). The State is required to prove that termination is appropriate by a showing of clear and convincing evidence, a higher burden than establishing a mere preponderance. *In re V.A.*, 51 N.E.3d at 1144. "The purpose of terminating parental rights is not to punish parents, but to protect their children." *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[15] Indiana Code section 31-35-2-4(b)(2) sets out the elements that DCS must allege and prove by clear and convincing evidence to terminate a parent-child relationship:

> (A) that one (1) of the following is true:
>
> > (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
> >
> > (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the

finding, and the manner in which the finding was made.

    (iii)    The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B)    that one (1) of the following is true:

    (i)    There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

    (ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

    (iii)    The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C)    that termination is in the best interests of the child; and

(D)    that there is a satisfactory plan for the care and treatment of the child.

If the court finds that the allegations in a petition described above are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

## *Failure to Remedy Conditions*

[16]     Father does not challenge the court's determination under Indiana Code section 31-35-2-4(b)(2)(A), but raises challenges under Sections (b)(2)(B), (C), and (D). We begin with Section (b)(2)(B), where Father raises objections under both subsections (i) and (ii). Section (b)(2)(B) is written in the disjunctive, and therefore the court need only find that one of the three requirements of Section (b)(2)(B) has been established by clear and convincing evidence. *See In re L.S.*, 717 N.E.2d at 209. Because we find it dispositive under the facts of this case, we review only whether DCS established, by clear and convincing evidence, that there is a reasonable probability that the conditions that resulted in Child's removal from or placement outside Father's home will not be remedied. *See* I.C. § 31-35-2-4(b)(2)(B)(i).

[17]     We engage in a two-step analysis to determine whether the conditions that led to Child's placement outside the home likely will not be remedied. *K.T.K.*, 989 N.E.2d at 1231. First, we ascertain what conditions led to placement outside the home, and second, we determine whether there is a reasonable probability that those conditions will not be remedied. *Id.*

[18]     Child was initially removed from Mother's home due to physical abuse and placed with Father. Less than five months later, Child was removed from Father's care after Father tested positive for THC, Father failed to follow court orders designed to address his substance abuse issues, and new allegations arose that Child suffered physical abuse while in Father's care.

[19] In support of his argument that DCS failed to show a reasonably probability that the conditions will not be remedied, Father points to evidence that: he completed some court-ordered services; he maintained employment and housing throughout the case; he may be released from incarceration within five months; DCS closed out his service referrals in 2017; Child's foster home was approximately a three-hour drive from his residence; and another of his children was returned to his care after he completed some services in that child's case. However, Father's argument is a blatant request to reweigh the evidence, which we will not do. *In re V.A.*, 51 N.E.3d at 1143.

[20] As the trial court found, DCS provided Father with multiple referrals for services, including substance abuse treatment, which were closed only after Father failed to successfully participate in or complete them. Further, while Father lacked the means to travel long-distance to visit with Child, he failed to consistently take advantage of other services DCS provided to help him maintain contact with Child, including offering Father phone and gas cards and transportation services. As of the 2019 fact-finding hearing, Father had not visited or communicated with Child since January 2017.

[21] During the pendency of the CHINS case, Father was charged with and subsequently pleaded guilty to maintaining a common nuisance and possession of marijuana. Father testified that the charges stemmed from "where DCS showed up at my house and found . . . a small bag of marijuana[.]" (Tr. 16.) Father is a self-described "addict" (Tr. 18) who testified that he had not completed any substance abuse treatment programs during the CHINS case.

Father admitted to using methamphetamine in December 2018, while the termination petition was pending and shortly before the fact-finding hearing. As a result, Father was charged with possession of methamphetamine and was incarcerated at the time of the fact-finding hearing. He testified that while he had approximately five and a half months to serve on his sentences from the 2017 convictions, he had also pleaded guilty to the possession charge, subjecting him to a potential sentence of up to three additional years.

[22] Overall, the court's findings that Father failed to participate in reunification services offered (including substance abuse treatment and visitation), continued to engage in drug abuse, and pursued drug-related criminal activity that led to incarceration, clearly and convincingly supports the determination that there was a reasonable probability that the conditions that led to Child's removal from and placement outside of Father's care would not be remedied.

## *Best Interests*

[23] Father also contends that DCS did not present clear and convincing evidence that termination is in Child's best interests. *See* I.C. § 31-35-2-4(b)(2)(C). In determining the best interests of a child, the trial court must look beyond the factors identified by DCS and consider the totality of the evidence. *In re J.C.*, 994 N.E.2d 278, 289-90 (Ind. Ct. App. 2013), *reh'g denied*. In doing so, the court must subordinate the interests of the parent to those of the child. *Id.* at 290. The trial court need not wait until a child is harmed irreversibly before terminating the parent-child relationship. *Id.* Further, a parent's historical and

current inability to provide a suitable environment supports finding termination of parental rights is in a child's best interests. *Id.*

[24] We have previously held that recommendations by the case manager and CASA to terminate parental rights, in addition to evidence that the conditions resulting in removal likely will not be remedied, are sufficient to show by clear and convincing evidence that termination is in the child's best interests. *In re A.D.S.*, 987 N.E.2d 1150, 1158-59 (Ind. Ct. App. 2013), *trans. denied*. As the trial court found, both the FCM and CASA opined that termination was in Child's best interests. And, as discussed above, there was clear and convincing evidence that the conditions resulting in Child's removal from Father's care likely would not be remedied.

[25] Father argues, however, that termination was not in Child's best interests because Child has had multiple placements since being removed from Father's home and thus Child's need for permanency was not being met. Father directs our attention to *In re G.Y.*, 904 N.E.2d 1257 (Ind. 2009), *reh'g denied*, in which our supreme court held that termination was not in a child's best interests where mother's release from prison was imminent, mother had taken substantial steps during her incarceration to complete required services available to her in prison, and mother maintained consistent contact with the child throughout her incarceration. *See id*. 1262-65. In that case, child was closely bonded to the foster family, which was providing permanency and stability in child's life. *Id*. at 1264-65. Nevertheless, the court held that child's need for immediate permanency through adoption was not "a sufficiently

strong reason" alone or in conjunction with other factors to conclude that termination was in child's best interests. *Id*. at 1266. In so holding, the court recognized "the positive steps [m]other has taken while incarcerated, her demonstrated commitment and interest in maintaining a parental relationship with [child], and her willingness to continue to participate in parenting and other personal improvement programs after her release." *Id*. at 1265.

The same cannot be said for Father, who throughout the CHINS case failed to engage with services designed to remedy the need for Child's removal and, at the time of the fact-finding hearing, had not seen or otherwise communicated with Child for nearly two years. Father's pattern of behavior demonstrates both a historical and current inability to provide a suitable environment for Child, and, unlike in *In re G.Y.*, indicates that Child's need for permanency and stability is unlikely to be met by Father any time in the near future. There is clear and convincing evidence to support the court's finding that termination is in Child's best interests.

## *Satisfactory Plan*

Lastly, Father argues that DCS did not present a satisfactory plan for the care and treatment of Child. *See* I.C. § 31-35-2-4(b)(2)(D). DCS's plan for Child is adoption. Father argues the plan is insufficient because "it should be required that before DCS can be successful on [a] termination of parental rights petition it must have clearly established an adoptive home for the child in which the child will succeed." (Appellant's Br. 13.) However, a plan for the care and treatment of a child "need not be detailed, so long as it offers a general sense of

the direction in which the child will be going after the parent-child relationship is terminated." *In re D.D.*, 804 N.E.2d 258, 268 (Ind. Ct. App. 2004), *trans. denied*. DCS's plan to place Child for adoption was satisfactory.

# Conclusion

[28]    DCS was not collaterally estopped from pursuing a second petition to terminate. DCS established by clear and convincing evidence the requisite elements to support the termination of parental rights.

[29]    Affirmed.


Najam, J., and May, J., concur.